Boyd *vs.* Sales.

---

W. H. BOYD, plaintiff in error, *vs.* T. B. SALES, defendant in error.

A suit had been instituted on a note made prior to the late war, and judgment was obtained at the September term of the Court in 1863, and an execution issued thereon, returnable to the next term of the Court, and was placed in the hands of the sheriff for collection, and the defendant paid to the sheriff the full amount of said *fi. fa.* in Confederate Treasury notes, which were received and receipted for by the sheriff, in full satisfaction of the same. It also appears in the record that the defendant, making such payment, had collected the money so paid to the sheriff, by suits instituted by him on the notes due him, made prior to the war, for the *express purpose of paying off said plaintiff's judgment and fi. fa.* A motion was made in the Court below to vacate and set aside the payment and satisfaction of the *fi. fa.* and judgment by the sheriff, on the ground that the Confederate Treasury notes in which the payment was made by the defendant, and received by the sheriff, had greatly depreciated in value at the time of payment, which motion was allowed by the Court: *Held*, that a *bona fide* payment of an execution by a defendant to the sheriff, in Confederate Treasury notes, the only currency in circulation as money at the time of such payment, as between citizens of this State, in the absence of any *notice not to receive such currency*, was, under the then existing laws of this State, such a payment as will protect the defendant, and that it was error in the Court below to order the entry of satisfaction on said judgment, and the *fi. fa.* to be vacated upon the statement of facts contained in this record.

Boyd *vs.* Sales.

Motion for *fi. fa.* to proceed. Decided by Judge PARROTT. Bartow Superior Court. March Term, 1869.

Before the war between the United States and the Confederate States of America, Boyd, for a valuable consideration, had become indebted to Sales, $2,900 20 upon a gold basis. Sales sued him, and in September, 1863, obtained a judgment against him for that sum, with interest and costs. *Fi. fa.* was issued and was in the hands of the deputy sheriff in 1864, when Confederate currency was worth only five cents in the dollar, as compared with gold. Then Boyd voluntarily paid the principal, interest and costs to the deputy sheriff in Confederate currency, and he entered the *fi. fa.* satisfied. The deputy sheriff received said currency while the "Stay-law" was considered of force, without authority from Sales or his attorney. Neither Sales nor his attorney would receive said currency from the deputy sheriff. Sales also had debts due him before the war, upon a gold basis, and he sued upon them after Boyd sued him, and collected the currency with which he made said payment, for the express purpose of making it therewith. These facts appearing by a rule in favor of Boyd against Sales, requiring him to show cause why the said satisfaction of said *fi. fa.* should not be declared null, and why the *fi. fa.* should not proceed as if said payment had never been made, and Sales' answer thereto.

They submitted the whole matter to the Judge, and he ordered the entry of satisfaction to be cancelled and the *fi. fa.* to proceed. This is assigned as error.

DAWSON A. WALKER, W. T. WOFFORD, for plaintiff in error, said it was the sheriff's duty to collect the *fi. fa.*: 34 Ga. R., 346, 403 ; 5 Cowen, 252. The payment was satisfaction, 3 Kelly, (Ga. R.,) 1 ; Bailey's S. C. R., 220. Sales or his attorney should have given notice that currency would not be taken, 37 Ga. R., 205.

T. W. ALEXANDER, for defendant.

WARNER, J.

It appears from the record in this case, that, in September, 1863, Sales obtained a judgment against Boyd upon a note given to him before the war, that a *fi. fa.* issued thereon, and was placed in the hands of the sheriff for collection, that whilst said *fi. fa.* was in the hands of the sheriff, and before any levy was made on the defendant's property, he paid the full amount due thereon to the sheriff in Confederate money, the only currency then in circulation, but which had greatly depreciated in value as compared with gold; that the sheriff received the currency so paid by the defendant, and entered the *fi. fa.* satisfied. It also appears from the record, that when Sales instituted his suit upon the note against Boyd, the latter instituted suits upon notes held by him, given before the war, and collected the same in Confederate currency for the *express purpose* of paying off Sales' demand, and that it was paid in currency so collected by him for *that purpose.* Upon this statement of facts, the Court below ordered the entry of satisfaction made by the sheriff on Sales' *fi. fa.,* to be cancelled, and the *fi. fa.* to proceed to collect the amount due thereon out of Boyd's property. This decision of the Court is assigned for error here.

The plaintiff, Sales, had invoked the process of law to collect his debt, obtained judgment, and the execution which issued thereon had been placed in the sheriff's hands, who was the authorized agent of the law, to collect the same. The defendant paid the amount due thereon to that agent, in the only circulating medium in the country at that time, and which he had collected on debts due to him before the war, for that express purpose. There was no *notice* given to the sheriff not to receive Confederate currency, nor to the defendant that such currency would not be received in payment of the debt. In accordance with the ruling of this Court in *King vs. King,* (37 Ga. R., 205,) when a party plaintiff desired to protect himself against receiving Confederate money, the common currency of the country, it was his duty to give *notice* to the collecting officers, or to the party, that he would

not receive such currency in payment of his demand. So, in this case, if the plaintiff did not expect, or desire, to receive Confederate currency in payment of his debt, it was his duty to have *notified* the collecting officer not to receive it, or to have notified the defendant that he would not receive that currency in payment thereof.

It is said this is a hard case upon the plaintiff, and so it is, but on the other hand, if the defendant is required to pay the execution again in good money, it will be equally hard upon him, according to the statement of facts contained in the record. Inasmuch as the plaintiff did not think proper to protect himself by giving *notice* not to receive Confederate currency at the time the payment was made, this Court cannot protect him under the general rule heretofore adopted in relation to that question. So far as the record shows, the defendant acted in *good faith* in making the payment to the sheriff in the same currency which he had collected on debts due him before the war, and in our judgment he is entitled to the benefit of the general rule heretofore adopted by this Court in such cases between citizens of this State. Let the judgment of the Court below be reversed.