Warner, Chief Justice.
This was a hill filed by the complainant against the defendants as administrators of Burnham, praying for an account and settlement of a fund of $4,081 68, alleged to have been received by their intestate in his lifetime, as trustee for Catharine Westbrook. On the trial of the case, the jury, under *the charge of the Court, found a verdict for the defendants. A motion was made for a new trial on the several grounds set forth in the record, which was overruled by the Court and the complainant excepted. It appears from the record that on the 26th day of April, 1860, Burnham, the defendants’ intestate, received as trustee for Mrs. Westbrook, the sum of $4,081 68. In February, 1864, Burnham obtained an order from the Judge of the Superior Court authorizing him, as trustee, to invest the fund then in his hands in Confederate money in Confederate bonds — which was done, and the same became worthless.
The main point in the case is, how "and in what manner did the fund received by the trustee in 1860, glide into Confederate money in 1864, when the same was invested by him in Confederate bonds under the order of the Judge of the Superior Court? It is quite clear that it was not Confederate money when the trustee received it, and he never made any return of his actings and doings as trustee, in relation to that trust fund, as the law required him to do. The defendants admit in their answer that their intestate received the $4,081 68, as charged in complainant’s bill, but allege that to the best of their information and belief that fund was converted into Confederate money by their intestate in the due execution of his trust, and ask to be protected under the order investing the same in Confederate bonds. The Court charged the jury that the answer of the defendant, upon their information and belief, was not evidence, unless responsive to the bill, then it is evidence, but did not instruct them what was or was not responsive to the bill. This charge of the Court, in view of the facts of the case, was error. As before stated, the answer admits the receipt of the money by their intestate in I860, but sets up by way of avoidance of his liability therefor, that in some way in the execution of his trust it got into Confederate money. This latter part of the answer was not responsive to the allegations in the bill, and was not evidence for them, it being upon their information and belief only. The Court should have instructed the jury as to what *was and what was not responsive to the bill in order to make it evidence for the defendants: Neal vs. Patton, 40 Georgia Reports, 363. The Court also charged the jury contrary to the request of complainant’s counsel, that the order of Judge Bochrane was conclusive proof upon complainant that it was trust money which *353 was so ordered to be invested. This charge of the Court was er ror in view of the facts of this case. Whilst it may be true that the order of Judge Lochrane was conclusive that the defendants’ intestate did invest the Confederate money then in his hands as trust property, still, that order was not conclusive as to how or in what manner the fund received by the defendants’ intestate in 1860 got into Confederate money in 1864. The point in the case was how did the trust fund received by the defendants’ intestate in 1860 get into a Confederate trust fund in 1864, to be invested as such under that order. The defendants’ intestate, by some means had converted the trust fund into Confederate money, and the order only authorized him to invest that Confederate money. Whether the defendants’ intestate had wrongfully or improvidently converted the trust fund received by him in 1860 into Confederate money, as such trustee was not involved or adjudicated by the order of Judge Lochrane.
It is true, this Court has held on several occasions, and now holds, that when trustees have received Confederate money during the war in discharge of their legal duty when it was the common currency of the country, in good faith, when prudent business men were receiving it, that they would be protected; but this Court has alwaj^s held that the facts and circumstances under which it has been received, must be clearly and satisfactorily shown as evidence of .that good faith and the fairness of the transaction, or they will not be protected. When a trustee, in the discharge of his legal duty, has received into his hands good funds, and seeks to discharge himself from liability therefor, on the ground that the same has been converted by him into Confederate money and lost, the burden of proof is upon the party who insists upon such loss, and he should be required to make clear and satisfactory proof that *he has acted with entire good faith to entitle him to be protected. The definition of good faith which the Court gave in charge to the jury in this case was error, to-wit: “Honesty and a purpose to do right, no matter how mistaken about the law.” If a trustee violates the law in the discharge of his duties as trustee, then he is responsible for such violation, no matter how honestly he may have acted; his ignorance of the law will not excuse him, for trustees as well as other persons are bound to know the law and to regulate their conduct by it. But when they act honestly and in good faith in the discharge of the'ir duties under the law and not in violation thereof, then they will be protected.
Let the judgment of the Court below be reversed.