## WILLIAM DICKSON VS. E. J. WRIGHT.

1. ATTORNEY AND CLIENT: *Authority of former cannot be delegated.*
   The relationship of attorney and client is one of trust and confidence, and is protected against abuses on the part of the former by very harsh and peremptory remedies. The authority of the attorney cannot ordinarily be delegated to another, towards whom the client has not extended this trust, and against whom he cannot invoke these remedies. If a debtor make payment of his debt to an agent of the attorney, known by him to be such, and who has not at the time the evidence of indebtedness in possession, such payment will be invalid against the demand of the owner of the claim.

2. SAME: *Case in judgment.*
   It was agreed, between attorneys holding note for collection and the debtor, that the latter should hand the amount due to a mutual friend, who was not intrusted with the note. The money was so paid by the debtor, but never reached the attorney. *Held,* that the payment was invalid, and the proof of the payment made to a mutual friend was inadmissible.

ERROR to the Circuit Court of *Alcorn* County.

Hon. B. B. BOONE, Judge.[1]

A sufficient statement of the case will be found in the opinion of the court.

The errors assigned are as follows:

1. In admitting in evidence for defendant the receipt of William L. Duncan.

2. In admitting the testimony of defendant that he had paid to William L. Duncan $100.

3. In giving instructions for defendant.

4. In refusing 5th instruction asked by plaintiff.

5. In overruling the motion for a new trial.

*Curlee & Stanly,* for plaintiff in error:

An attorney at law is the agent of his client and has the authority to act for him, but he (the attorney) cannot delegate that authority to another so as to bind the client by the acts of such other person. It has grown into a maxim, *delegata potestas non potest delegari.*

The authority of an attorney in collecting extends no further

---

[1] T. E. WHITFIELD, Esq., presided as special judge in this case.

than to receive the amount in legal currency.    Garvin *v.* Lowry, 7 S. & M., 26.

A collection in bank currency is not authorized.    Gasquet et al. *v.* Warren, 2 S. & M., 518; Clark & Co. *v.* Kingsland, 1 S. & M., 256; 2 U. S. Dig. (1st series), § 239.   See Mississippi authorities, George's Dig., 42, §§ 24–26; Story on Ag., § 13; 2 Kent's Com., § 41.

It was clearly error to refuse the following instruction asked by plaintiff:   "That an attorney at law, as such, who has a claim for collection has no authority to appoint a sub-agent to collect or settle such debt, and a payment to such sub-agent is not binding upon the principal or client unless the money went into the hands of the principal or client."

*Potter & Green*, for defendant in error:

The fact of the payment of the money to Duncan is clearly proved.   It was not a sending of the money by Duncan to E. A. Reynolds, the attorny who held the note, but it was a payment of the note by the defendant *to that attorney*, in the mode and through the person suggested and agreed upon by the attorney himself.   The words are that Reynolds was to ascertain and give to Duncan the amount due on the note, and that defendant " could then *pay the same* to said Duncan."

Duncan was present, and understood the arrangement.   The receipt of Duncan was properly admitted in evidence. 1 Greenl. on Ev., §§ 147, 148.

The 5th instruction asked by defendant was properly refused. Story on Ag., § 14; Commercial Bank, etc., *v.* Morton, 1 Hill (N. Y.), 501.

An attorney at law holding a note for collection may appoint an agent to receive the money, and a payment to such agent will bind the principal.   McEwin *v.* Mayzyck & Bell, 3 Rich. (S. C.), 210; Briggs *v.* Georgia, 10 Vt., 70; Story on Ag., § 14; Mead *v.* Engs, 5 Cow., 308; Edwards on Notes, 628.

CHALMERS, J., delivered the opinion of the court.

Adopting the statement of defendant, which seems to have

been approved by the verdict of the jury, the facts of this case are as follows :

The note sued on was placed by the holder in the hands of Reynolds, Boone & Reynolds, attorneys at law, for collection, by suit or otherwise, in 1860. Shortly before the September term, 1860, of the circuit court of Tishomingo county, defendant agreed with Col. E. A. Reynolds, the senior member of the law firm, that if suit should be held up he would send him $100, by the hands of W. L. Duncan, on or before the first day of the term. The sum was delivered by defendant to Duncan, but never paid over by the latter to the attorneys, as is now ascertained.

In December, 1860, defendant met Col. Reynolds in the town of Corinth, and informed him that he then had $1,000 in the safe of Duncan, in said town, and that he was ready to pay off the note. It does not appear whether anything was then said about the $100 previously transmitted or not. Reynolds told defendant that he did not have the note with him, nor did he know the amount of it, it being in his office at Jacinto. Reynolds further said to defendant that Duncan, in whose safe the money was deposited, was coming to Jacinto in a few days, to make a settlement with him (Reynolds), and that he (Reynolds) would then make out and give to said Duncan a statement of the amount due on said note, and that he (defendant) could then pay the same to Duncan. Defendant and Reynolds and Duncan all being in company, it was then and there agreed that this arrangement should be carried out.

On 26th March, 1861, in the town of Corinth, defendant paid to Duncan $662, in full of said note, taking his receipt therefor, which receipt specified on its face that it was paid and received." in full of balance of note, and interest, executed by said E. J. Wright to H. Mask, and now in the hands of E. A. Reynolds."

This receipt, signed by Duncan, was produced and read on the trial, against the objections of plaintiff, who excepted thereto.

Shortly after the payment to Duncan the civil war broke out, and nothing more passed between the parties until its close. Upon the return of peace suit was instituted on the note, which was still in the hands of Reynolds.

Each of the members of the legal firm testified that he had never, received any money whatever on the note. Col. Reynolds stated that he had no recollection whatever of the circumstances deposed to by defendant, but that his memory as to transactions occurring before the war was very bad, and that he would not say that defendant's statement was untrue. He admitted that Duncan was a personal friend of his, a gentleman of standing and of means, and that he would have been entirely willing to have trusted him with any amount of money. The court, having admitted defendant's testimony and the receipt executed by Duncan, virtually charged the jury that if they believed the statement deposed to they must render a verdict for defendant. It refused instructions asked by plaintiff announcing a different principle. The jury found verdict for defendant, and plaintiff appealed.

The case is argued by defendant's counsel upon the assumption that Duncan acted throughout as the agent of Reynolds. Counsel for appellant do not concede this, but insist that, even if he was such agent, a payment to him was not binding on the owner of the note, because the attorney had no right to delegate that authority to receive payment which the client had not intrusted to him. It seems to us that Duncan was at least as much the agent of defendant as of Reynolds. As to the first $100 which defendant sent by him to the attorney, in order to induce him to hold up, he was much more so. We think as to that sum Reynolds' agreement was to hold up the suit upon the reception of the money, and that the agent for its transmission was selected by the debtor. It is true that the suit was held, though the money was never received. But no inference can be deduced from this, for the reason that it was not to be paid until the first day of the ensuing term, and consequently suit could not be brought to that term, and the

immediate breaking out of hostilities prevented its being done thereafter.

The subsequent arrangement is stated to have been agreed to by all parties. If Duncan was the trusted friend of Reynolds, he was equally so of defendant. He had not only been previously selected by the latter as the bearer of the first $100, but he was also at that very time the custodian of his funds. If he was the exclusive agent of Reynolds, as is insisted by counsel for appellee, it is a little singular that he was never intrusted with the note, nor was there even any agreement that he should be. Defendant's statement is that Duncan was to be furnished with "the amount due on the note," meaning thereby a statement of the amount, and he was to pay this amount to him. Considering that his money was already in Duncan's safe, the natural inference from this arrangement would seem to be that a statement of the amount due on the note was to be given to Duncan, in order that when defendant withdrew his deposit a sufficient sum should be left to meet the note which Reynolds was thereafter to present. If Duncan was appointed Reynolds' agent to collect the note it is difficult to conceive why he was not intrusted with the paper, since it would seem that defendant might well object to an arrangement, made in advance, by which he was to pay over his money to the agent of another, and leave his note still outstanding in that other's hands.

But, if we concede that Duncan was the agent of the attorney for the collection of the note, the question is presented whether an attorney at law, by virtue of the reception by him of a claim for collection, and in the absence of any special circumstances or instructions, can delegate to another the right to receive payment thereof, which payment, when made to such other, shall bind the owner of the claim. It would seem upon principle that he cannot do so. His own authority is but a delegated one, and according to the familiar maxim it cannot be delegated.

The relation of an attorney to his client is one of very high

trust and confidence, and his selection is dictated by a reliance in his skill and integrity, which the client may not feel towards any other person. In the case at bar the owner of the note in question may have felt the most implicit confidence in the business capacity and integrity of the attorneys in whose hands he had placed it, but have been wholly unwilling to extend the same to a person to him unknown. Very peremptory and harsh remedies are provided against a lawyer who has collected and failed to pay over the money of his client. These the client could not invoke against the third person whom the lawyer has selected as his agent for making the collection.

An immense number of cases illustrating the reciprocal rights and duties of clients and attorneys are collected and collated in 2 U. S. Dig. (1st series), by Abbott, p. 329, *et seq.*

A somewhat extended examination of them has disclosed only three cases directly adjudicating the question under discussion, and of these one affirms and two deny the right of the attorney to bind his client by the reception by an agent appointed by the former of the money due to the latter.

In McEwen *v.* Mazyck & Bell, 3 Rich. (S. C.), 120, the defendant confessed judgment and immediately paid over the money to the clerk of the court, Thos. P. Evans.

Josiah J. Evans was the attorney for the judgment creditors. The supreme court of South Carolina held that it was competent to prove, in a subsequent proceeding between plaintiff and defendant, that Thomas P. Evans was the general agent of Josiah J. Evans, in Kershaw district, to receive money for the said Josiah J. Evans in his professional business, and that the payment to Thomas P. Evans was binding on the plaintiff. The court seem to rest their conclusion upon the idea that an attorney at law occupies a higher position, with broader powers, than an attorney in fact. The latter, they say, acts under a private employment, while the former exercises a *quasi* public authority.

It is argued that persons engaged in similar public employments, such as factors, bankers, auctioneers, and others, whose

business it is to receive money for their employers, discharge this duty through clerks and agents, whose acts are as binding on their principals as if performed by the factors or bankers in person.

We confess that this reasoning does not commend itself to our judgment.

We think that there is but little similarity between the employments suggested and that of an attorney at law. The delegation of authority to agents and clerks by parties engaged in such employments is usual, customary, and indeed indispensable.

This is well understood by those dealing with them, and the acts of such agents and clerks will be binding on the principals under the principle announced in Story on Ag., § 14, in which the learned author declares that a power of delegation will be implied "where it is indispensable in order to accomplish the end; or it is the ordinary custom of trade; or it is understood by the parties to be the mode in which the particular business might or could be done; or where, from the nature of the agency itself, a sub-agent is necessary."

We think that the true rule, so far as attorneys at law are concerned, is announced in Johnson v. Cunningham, 1 Ala. (N. S.), 258, in which, after announcing the doctrine laid down by Story, *supra*, the court proceeded to say: "Taking the law to be as we have stated, it follows that an attorney at law, in virtue of his ordinary powers, cannot delegate his authority to another so as to raise a privity between such third person and his principal, or to confer on him, as to the principal, his own rights, duties, and obligations; and if there was anything in the nature of the employment from which a delegation of authority might be implied, or to show that it was contemplated by the parties, it should have been shown in the proof."

In Kellogg & Co. v. Norris, 5 Eng. (Ark.), 18, it was distinctly affirmed that where a note had been sent for collection

to one lawyer, and by him transmitted to a second one, payment to the second would not discharge the note.

We are not prepared to concur altogether in this conclusion. It not being shown that the maker of the note had notice that the second lawyer held it as the agent of the first, we think he might well have paid his note to the party in whose possession he found it. But in the case at bar the defendant knew all the circumstances under which his payment was made, and he elected to make it without the surrender of the note, and to a party whom he knew not to have possession of it.

We think that the testimony showing payment to Duncan should have been excluded; that the instructions which were given for defendant, and which were excepted to by plaintiff, should have been refused, and that those asked by plaintiff should have been granted.

The case is reversed and remanded, and new trial awarded.