JOHN W. BRANDON, administrator *et al.*, plaintiffs in error, *vs.* FREEMAN H. ROWE, administrator, defendant in error.

1. It is error for the court to assume, in its charge, a state of facts not shown by the evidence.
2. Where an administrator *de bonis non, cum testamento annexo*, in defense to a bill for account and settlement by the legatees, sets up that he, in good faith, received Confederate money for debts due the estate, and that it had become valueless, the facts and circumstances under which such money was received must be clearly and satisfactorily shown.

Charge of Court. Administrators and Executors. Confederate Money. Before Judge TOMPKINS. Laurens Superior Court. April Adjourned Term, 1876.

Brandon, as administrator of John T. Fulwood, deceased, and as next friend of John I. Fulwood, a minor, together with Mrs. Brandon, the mother of said minor, who also sued as his next friend, filed a bill, on March 11, 1875, against Rowe, administrator of Mary Jones, deceased, making, in brief, the following case :

In 1856 Mrs. Mary Jones, who was the grand-mother of John T. Fulwood, died. By her will, which was duly probated and recorded, she bequeathed to him all of her estate, both real and personal, consisting of three thousand acres of land in Laurens county, a number of slaves and other personal property—all aggregating in value $200,000.00, or other large sum. One Francis Thomas was the executor of the estate, and had the management of it until 1859,

when Rowe was appointed administrator *de bonis non*. On June 29th, 1861, Rowe had in his hands, besides lands and negroes, $11,729.39 in currency which was at par with gold. From July 1st, 1861, to July 1st, 1862, he received, besides interest, $4,018.64 in excess of disbursements; to July 1st, 1863, $4,027.44; and to July 1st, 1864, $3,134.48. All of these sums, with interest, complainants claim to be due and unpaid. On February 19th, 1861, John T. Fulwood executed a deed of trust by which he conveyed to one John W. Rabun all of the property which had been devised to him by his grand-mother, in trust for his wife and such child or children as should be born to them, with certain reservations immaterial here. Rabun accepted the trust, but never acquired possession of any of the trust property or money, which remained in the hands of Rowe. In 1865 Fulwood died, leaving a wife and minor child. Afterwards Rabun also died, and no one has ever been appointed to succeed him. In 1866 Mrs. Fulwood became her husband's administratrix, but the next year her letters abated by her marriage with Brandon. The estate remained unrepresented until 1873, when Brandon became administrator *de bonis non*. The minor, J. I. Fulwood, has no guardian, and, therefore, sues by next friend. Rowe has never made any final settlement of the estate of Mrs. Jones. Such a settlement has been demanded of him by complainants, and refused. Discovery was waived.

The bill prayed for account and settlement with Rowe, and for general relief.

Exhibit "A" contained a copy of the will of Mrs. Jones, in which she devised her property to Partin, Thomas and Coombs, for the use of J. T. Fulwood, and to vest in the heirs of his body at his death.

Defendant demurred to the bill, and answered substantially as follows:

About the beginning of the war defendant, as administrator *de bonis non* of Mrs. Jones, received property of the estate, consisting of Confederate money and bonds, negroes,

and notes for negro hire. As the war continued, Confederate money depreciated in value, and defendant did not consider it for the interest of the estate to attempt to collect such notes. What collections he did make, were applied to the payment of the debts of the estate, or turned over to Fulwood, Rabun, or Mrs. Fulwood (now Mrs. Brandon), or perished on his hands as next stated. By the results of the war the negroes were freed, Confederate money and securities became valueless, and a large number of the notes insolvent. The constitution of 1868 prohibited the collection of notes given for negro hire; and this was not altered until it was decided in conflict with the constitution of the United States, by the supreme court, in 1871. In the meantime the limitation act of 1869 was passed, by which the collection of all of the notes was barred. Thus, although defendant used all due diligence, the property of the estate in his hands became valueless. Further, in 1863 or 1864, hearing that Rabun had been appointed trustee, defendant wrote to him at Savannah, requesting him to come to Laurens county and take charge of the property in his hands. Rabun came, but begged defendant to retain possession of the property, which the latter did at his solicitation, but considered himself as a bailee from that time. He has always been, and is now, ready to turn over the property of the estate in his hands to any person authorized to receive it. Denies any demand upon him therefor. Pleads the statute of limitations as to complainants' action.

Complainants amended their bill substantially as follows: The will of Mrs. Jones bequeathed to Partin, Thomas and Coombs, as trustees, all of her property, for the use of John T. Fulwood during his life, and to vest in his children after his death. The will directed that the negroes should be worked on the land. None of the trustees ever accepted the trust. The executor, and after him, defendant as administrator, violated this provision of said will and hired the negroes out. In 1861 defendant had in his hands be-

longing to the estate $11,729.39, which was at par value with gold. In 1861 and 1862, he received $4,757, which was not more than ten per cent. below par. All this he converted to his own use; and, in 1864, he invested his individual Confederate funds—not worth more than five cents in the dollar—in Confederate bonds, in the name of the estate, and substituted them in place of the good funds so converted. Complainants claim that, at the death of J. T. Fulwood, the corpus of the estate vested absolutely in his minor heir; and by the trust deed, the rents, profits, etc., during his life, vested equally in the wife and child. Pray as in original bill.

Defendant amended his answer, denying all fraud, conversion or admixture of the property of the estate with his own. In respect to not working the negroes on the lands, he answered that the lands had been taken by the heirs at law of Mrs. Jones, had been in litigation, and lost to the administrator.

In his testimony, defendant stated that he received the Confederate money in evidence, during the years 1861, 1862, 1863, and 1864, for the hire of negroes belonging to the estate, but did not further specify the time or circumstances of such receipt.

The other facts of this case will appear from the decision.

WARNER, Chief Justice.

The complainants filed their bill against the defendant as administrator, for an account and settlement, waiving discovery. On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the defendant. A motion was made for a new trial on the several grounds alleged therein, which was overruled by the court, and the complainants excepted.

One of the grounds of the defendant's defense was, that

he had received Confederate money for debts due to the estate in good faith, which perished on his hands, and that he was therefore entitled to be protected under the law.    The defendant offered in evidence Confederate notes to the amount of $6,190.00, as having been received by him as administrator, which he had kept separate from his own money, all of which, except one ten dollar note, were dated 17th of February, 1864.  In his testimony, as it appears in the record, he stated that he collected the Confederate money which he then had on hand all along through the years 1861, 1862, 1863 and 1864.

The court charged the jury, amongst other things, " that if the evidence shows that from time to time the new issue of Confederate money was, by Rowe, the defendant, substituted in lieu of the old issue of such money, that does not change the identity of the bills, but it still remains the property of the estate." The court also charged the jury, in substance, at the request of defendant's counsel, " that if John T. Fulwood took only a life estate under the will of Mary Jones, and if he refused to take possession of the property under the will, and did not receive it, and died without receiving it, and after the estate was merged into Confederate money and notes—based upon the hire of negroes, and worthless— and the estate was in that condition when the heirs of John T. Fulwood had a right to the estate, at the time of his death, then they can recover no more than John T. Fulwood, or his administrator, could have recovered."

1.  There is no evidence in the record that the defendant substituted the new issue of Confederate money in lieu of the old issue of such money, at any time ; but, on the contrary, the evidence is, that the $6,190.00, which he claims credit for as having perished on his hands, was received by him along through the years 1861, 1862, 1863 and 1864, all of which, except ten dollars, was dated in February, 1864. There is no evidence in the record, that we can discover, that John T. Fulwood refused to take possession of the property under the will of Mary Jones, or that he did not receive it in his life-time.   Both of the foregoing charges of

the court having been given to the jury upon an assumed state of facts, not authorized by the evidence, it was error, and we are constrained to reverse the judgment for that reason.

2. Besides, the defendant did not make a very satisfactory showing, according to the ruling of this court in *Westbrook vs. Davis*, 48 *Ga. Rep.*, 471, as to how the $6,190.00 Confederate money was received by him, or when, or from whom collected.

Let the judgment of the court below be reversed.