JOHN M. HENDRY ET AL., APPELLANTS, VS. SAMUEL BENLISA, ADMINISTRATOR DE BONIS NON OF MOSES E. LEVY, DECEASED, APPELLEE.

1. The generic term "money" covers everything that by common consent represents property and passes as money in current business transactions, and the payment of a debt or judgment during the late Civil War in Confederate money and accepted, will be regarded as a full settlement, not subject to be again opened.

2. If at the time and place of payment in Confederate money it was generally received in business transactions, and was in fact the current money of the country, an agent's authority to receive it, in the absence of directions to the contrary from a resident principal, will be presumed.

3. The receipt of money due on a judgment by an officer authorized by law to accept it will satisfy the debt.

4. Clerks of the Circuit Court were not authorized by statute in this State in 1864 to receive payments of judgments, or to accept money on judgments, as paid into the registry of the court, without a judicial order for that purpose, and the payment to such officers on a judgment, without prior authority or subsequent ratification on the part of the judgment creditor, was no payment to him.

5. Money made on execution can, by statute, be paid to an attorney of record of a party in whose favor the execution issued, but such attorney has no authority by virtue of such relation to authorize a Clerk of the Circuit Court in his official capacity and standing in no previous relationship of agency to the attorney, or the judgment creditor, to accept money on a judgment.

6. A contract for the purchase of real estate was made in 1854, payments to be in three annual installments; the purchaser did not go into possession, nor make any improvements; suit was instituted and judgment obtained on the purchase money notes in 1863, and no valid payment of the judgment was made during the late Civil War, nor any effort to pay since, and the land has greatly enhanced in value and the purchasers

39

become insolvent: *Held*, That specific performance of the contract to convey will not be decreed on account of the long period of time since the making of the contract, the changed condition of the property as to value, and the laches of the purchasers in not complying with the contract.

7. Generally when the specific performance of a written contract to convey land is denied, its rescission will be decreed.

Appeal from the Circuit Court for Alachua county.

The facts are stated in the opinion.

*Angus Paterson*, for Appellant.

John M. Hendry, Archibald Campbell, and Norman Campbell purchased of Moses E. Levy 2,600 acres of land near Gainesville, and took a bond for titles on the first day of March, A. D. 1854, giving their three several promissory notes, each for $233.33, payable in one, two and three years, the last one falling due the first day of March, 1857, and they then went into the possession of the land. It was wild land, with very little or no improvements. Before the first note became due, to-wit: on the seventh day of September, A. D. 1854, the said Moses E. Levy departed this life, and David L. Yulee took out letters of administration on his estate on the tenth day of October, A. D. 1854, in St. Johns county, Florida.

There being some doubts as to whether the said Moses E. Levy had made a will, the purchasers refused to pay to David L. Yulee, admr., their first note when it became due, acting under advice of counsel, there being some kind of contest going on about the will. After all the notes became due, the said David L. Yulee as administrator brought suit upon them in

JANUARY TERM, 1896.		611

J. M. Hendry et al. v. S. Benlisa, Admr.—Argument of Counsel.

Columbia county, Florida. Hendry and others had no defense to said suit, except to establish the fact that David L. Yulee was the legal representative of Moses E. Levy, deceased, the matter of the will having been compromised, it was settled that David L. Yulee was the legal representative, and as such he obtained judgment against the purchasers upon the said promissory notes, on the ——— day of ———, A. D. 1863, and execution was issued and placed in the hands of the sheriff, with instructions to make the money. The sheriff notified Hendry et al. of the fact, and they paid the judgment on the twenty-fifth day of January, A. D. 1864, payment made to James M. Banks, Esq., attorney of record for David L. Yulee, admr. The money was deposited in the registry of the court, as it was required that the administrator should make a deed to the purchasers. The bond for titles was also filed then. All costs were paid and the attorneys of the administrator took out their fees; but before the administrator took the money or made the deed, to-wit: on the ——— day of ———, A. D. 1864, the court house was destroyed by fire, and also the judgment, execution and bond and money were destroyed.

No title has been made to the purchasers for said land.

David L. Yulee as administrator after the close of the war filed a bill in chancery in the county of Alachua, praying that the contract to sell the said land be cancelled, set aside and be declared null and void. Hendry et al., the purchasers, put in their answer, and also filed a cross-bill praying specific performance. The testimony of witness on both sides was taken, but before this time the said David L. Yulee departed

this life, and Samuel Benlisa was appointed administrator de bonis non of the estate of Moses E. Levy, deceased, who now carries on this suit.

At the trial before the Circuit Judge it was decided that the contract for the sale of land be cancelled, and the cross-bill be dismissed. From that decree this appeal is taken.

The law and justice are on the part of Hendry and the Campbells, the purchasers in this case.

The equities arising in this case are on the part of Hendry and the Campbells, the purchasers.

As to the testimony, pertaining to the law, there is no conflict, and as to that pertaining to the equities, the conflict is of little moment.

The two principal points in this case are, first, Whether the payment of a judgment to the clerk is a valid judgment.

Second, Whether the payment of a judgment in January, A. D. 1864, with Confederate money was a valid payment.

The principal, interest and costs of the judgment were paid into the registry of the court by John M. Hendry January 25th, 1864.

Payment to the clerk was payment of the judgment. Freeman on Judgments, 3d ed., sec. 463 and part of 462; Harvey vs. Walden, 23 La. An. 162; Governor vs. Read, 38 Ala., new series, 252; Boyd vs. Sales, 39 Ga. 72. Similar to case at bar.

In this case the money was paid to the clerk under the direction of Col. Banks, the attorney of record, who was authorized to satisfy the judgment or cancel it—Thom. Dig., page 359, secs. 9 and 10—but the money was paid into court and the bond for titles filed, for the administrator was bound to make a title

to the said lands to Hendry et al. to carry out the contract of the intestate.   Thom. Dig. 213, sec. 13.

Payment of a judgment in January, 1864, in Confederate money, was a valid payment.   Crutchfield vs. Robbins, Zingley & Co., 5 Hump. Tenn., 15; *Ibid*, 41; 6 Hump. 306; 1 Heisk. Tenn. 317; 4 Coldw. 362; 9 Heisk. 694; Henly vs. Franklin & Cage, 3 Coldw. Tenn. 472.

In this last case payment in Confederate money to the clerk was held good.   Glasgow vs. Lipse, 117 U. S. Reports 327.

"Money is a generic term, and covers everything which by consent is make to represent property, and passes as such currently from hand to hand, whether it be the iron of the Spartans, the cowry of the African, the gold and silver of the world, or the paper of modern Europe and America."

After payment, a judgment can not be restored. Vergne vs. Everston, 19 Ala., Am. Dec. 411; Freeman on Judgments, sec. 462.

Hendry says that Yulee agreed to take Confederate money for the judgment, but Yulee denies it.   Yet the evidence shows that Yulee ordered the sheriff to make the money or the execution, and the only medium for payment at the time was Confederate money.

It is held that being an administrator, he could not receive Confederate money for a debt, but administrators and guardians were allowed to invest in Confederate money.   Laws Fla. 1862, page 10, chap. 1322.

Hendry sold a stock of cattle at eight dollars a head to pay the judgment, the same price at which he sold cattle after the war.   The sheriff would have levied the execution on that stock of cattle and the money arising on all sales was Confederate money.

As to the possession, both parties paid the taxes on it for several years, but Yulee did not pay any taxes on it for many years. He began long after this suit, and Hendry had an agent there all the time, although it is claimed that Yulee had one too.

*Cooper & Cooper*, for Appellee.

MABRY, C. J.:

David L. Yulee, as administrator of the estate of Moses E. Levy, deceased, filed a bill against appellants, John M. Hendry, Archibald and Norman Campbell, for the purpose of cancelling a written agreement for the sale of several sections of land situated in Alachua county, entered into by and between the decedent, Levy, and appellants. The written contract to convey the land was made in March, 1854, and Levy agreed thereby to sell the sections of land described for seven thousand dollars in three installments, evidenced by promissory notes executed by the purchasers, and due respectively January first, 1855, January first, 1856, and January first, 1857. The agreement was to convey the lands by warranty deed when the last payment of the notes was made.

The material parts of the bill, as amended, allege the contract of sale from Moses E. Levy to the purchasers, Hendry and the Campbells, the death of the former, and the appointment of David L. Yulee as his administrator; that the defendants wholly failed to pay their said notes when they became due, and that Yulee as administrator brought suit in Columbia county on the notes and obtained judgment against the Campbells. The date of the judgment was in the year 1863, during the late Civil

War. It is further alleged that the judgment record and the notes were burned in the court house of Co lumbia county in the year 1866, and that no part of the judgment or notes had ever been paid either to Levy in his life-time, or his adminstrator since, and that said defendants were insolvent, without means out of which to collect the purchase money agreed to be paid by them for the lands. That on account of the failure of defendants to pay the purchase money for the lands, they had forfeited all rights or claim under the contract of purchase, and that complainant was willing and offered to cancel the said judgment obtained if the court should so direct; that defendants had never been in possession of the lands under the contract, but Levy and his representatives had, at all times since the sale, been in possession, paid taxes and exercised ownership, and that the lands since the con-tract of sale had greatly increased in value, and were then worth greatly more than when the agreement to sell was made; that all the other lands belonging to the estate had been sold under order of court for di-vision among the heirs and the lands in question were held by the administrator under an order of court to pay a balance due certain of the heirs on account of their distributive portions, and it was important that the estate be closed up at an early day. It is also al-leged on information that defendant Hendry claimed to have paid certain paper bills or notes, known as Confederate currency on the the said judgment to the Clerk of the Circuit Court of Columbia county, which, if true, was not authorized or consented to by com-plainant, or any person for him, and such pretended payment, if made, was never received or recognized by him; and further, that said Confederate currency

was not such money as he was authorized to receive, or could legally and properly receive, as administrator in the payment of said debt.

The answer of defendant admits the death of Levy and grant of letters of administration on his estate to David L. Yulee, and also the written agreement of sale of certain lands as alleged in the bill, except as to the description of the lands given, and as to this the answer sets out what is alleged to be the correct description of the lands agreed to be conveyed by Levy upon the judgment of the notes given for the purchase money of the same. It is alleged that upon the execution of the contract defendants went into possession of the lands, and have held possession ever since. It is admitted that suit was instituted on the notes and judgment obtained thereon in Columbia county in the year 1863, but it is alleged that defendants paid the judgment in full on the 25th day of January, 1864, and had the same fully discharged and satisfied.

Defendants further answered that Moses E. Levy died before either note became due, and when they became due defendants were informed that Levy left a will, and there existed at the time grave doubts as to whether David L. Yulee was authorized to receive payment of the notes and execute a deed, and for that reason tender of payment was not made; that when the judgment was obtained on the notes, the currency of the country was Confederate money, and when levy was about to be made, defendants offered to turn over the lands for the judgment, or pay the same in Confederate money, and that complainant refused to take the lands, but agreed to accept Confederate money; that defendants sold a stock of cattle for Con-

federate money, and with it paid the judgment in full to James Banks, the attorney of record of complainant, and the money was deposited in the clerk's office in the registry of the court by order of said attorney, after taking out his fees and costs.

Defendants allege that they had paid the taxes on the lands, and complainant had not, and that in the year 1864, after the judgment was paid, they were informed that complainant refused to pay the taxes on the lands, and referred the tax collector to the defendants for payment.

It is admitted that the court house and records in Columbia county were destroyed by fire, but it is alleged that the judgment was paid prior to that time.

Defendants also filed a cross-bill, in which they allege fully all the material facts set up in their answer, and pray for the affirmative relief of the specific execution of the written agreement to convey the lands.

The answer to the cross-bill admits the allegations as to the agreement to sell the lands, and the judgment rendered in Columbia county in 1863. The allegation as to possession of the lands by complainants in the cross-bill is denied, as well as all the other material allegations as to the agreement to accept Confederate money in payment of the judgment, or the authority of any one to accept the same for defendant. It is alleged that defendant could not, in the execution of his trust, accept Confederate money in payment of the purchase money for the lands, and that he did not insist on, or press the payment of the said judgment. It is also alleged that complainants were barred by lapse of time and the staleness of their claim, as well as by the statute of limitations, from

attempting a specific performance of the contract after so long a time.

After the issues were made up, but before proof taken, David L. Yulee died, and Samuel Benlisa was appointed administrator *de bonis non* on the estate of Moses E. Levy, deceased, and was admitted as a party in the proceedings in the place of deceased administrator.

On final hearing the cross-bill was dismissed, and the contract for the sale of the lands was cancelled, on the allegations and proofs under the original bill.

A material and controlling question on the appeal in this case relates to the alleged payment with Confederate money of the judgment obtained in Columbia county. If this payment was ineffective to discharge the debt, appellants were in great laches in not paying, or offering to pay, for the lands, as it is not shown, or attempted to be shown, that any other payment was made, or offered to be made, on the land notes. It is alleged, and not denied, that appellants were insolvent, and had no effects out of which the purchase money could be made, and we think it is clear from the evidence that they were not in possession of the lands before the bill was filed against them. The lands were wild and unimproved, and there is no evidence of any actual possession on the part of appellants before suit was brought. Subsequent to the war some of the lands were sold for taxes, and parties other than appellants obtained possession under tax deeds, and the administrator sued for and recovered possession of the lands held under such deeds. It is also shown that he paid taxes on the lands and had an agent to protect them from depredations. Appellants, it appears, paid some taxes on the lands and looked after them to some

extent, but there was no possession or improvement of the lands on their part, and they have no status on this account, as was the case in Tate vs. Pensacola, Gulf, Land & Development Co., decided at this term.

The contract for the sale of the lands was made in 1854, and it is alleged, and not denied, that the property had greatly increased in value at the time the bill was filed. On account of the long period of time since the making of the contract of purchase, and the changed condition of the property as to value, there can be no abasis of any equity for a specific performance of the contract, unless the judgment on the notes and the alleged payment with Confederate money changes the case. Knox vs. Spratt, 23 Fla. 64, 6 South. Rep. 924. In proof of the payment of the judgment, appellants put in evidence a receipt as follows:

"LAKE CITY, FLORIDA, Jan'y 25th, 1864.

STATE OF FLORIDA, }
COLUMBIA COUNTY. }

Be it remembered that on this day, received into the registry of this court the full amount of principal, interest and costs in a suit pending in said court, to-wit: David L. Yulee, administrator of Moses E. Levy, vs. John M. Hendry, Archibald Campbell and Norman Campbell, at the hands of John M. Hendry.

Witness my name and seal of office day and date above written.

(Signed) SAMUEL R. MATTAIR, Clerk C. C. C. C."

It appears, both from the pleadings and proof, and is conceded by counsel for appellants that the amount received by the clerk, and referred to in the receipt, was in Confederate money, and the first contention is, that the payment of the amount due on the judgment

to the clerk was of itself a valid payment and satis-
faction of the same. It is not contended that the ad-
ministrator ever received the money from the clerk.
The proof is clear that he never received it, and that
he informed Hendry within three months after the
payment to the clerk that he could not and would not
accept it. There is no showing that the administrator
himself gave any directions to the clerk to receive the
money. The authorities cited by counsel in support
of the contention, that payment of itself to the clerk
was a discharge of the judgment, sustain the view that
the receipt of money due on a judgment by an officer,
having authority in his official capacity to accept it,
will satisfy the debt. In the case of Governor vs.
Read, 38 Ala. 252, where a payment to a clerk was
held to be a discharge, he was authorized by statute to
receive payment in money after the judgment was ren-
dered; and so in the cases of Harvey vs. Walden, 23
La. Ann. 162; Boyd vs. Sales, 39 Ga. 72, and Henly
vs. Franklin, 3 Coldwell, 472, S. C. 91 Am. Dec. 296,
where payments were made to sheriffs, they were au-
thorized officers to receive payment. In the present
case it is left in doubt whether any execution ever is-
sued on the judgment in question, but however that
may be, there was no payment to the sheriff, and we
need not consider the effect of such a payment, if it
had been made. We find no statute existing at the
time authorizing the clerk to receive payment of judg-
ments, or to accept money as paid into the registry of
the court on judgments, without a judicial order for
that purpose, and our conclusion is that the clerk had
no authority by virtue of his capacity as clerk to ac-
cept the money and discharge the judgment.

The allegation in both the cross-bill and answer of appellant is that the Confederate money was paid to the attorney of record of Levy's administrator and deposited in the clerk's office in the registry of the court by order of said attorney. It is now further contended that the Confederate money was paid to the clerk under the direction of the attorney of record of the administrator, and that such attorney was authorized to satisfy the judgment. In reference to the right of an agent to receive paper currency issued by the Confederate government, the decisions have not been harmonious. No court since the war has held, so far as we know, that Confederate treasury notes were issued by lawful authority, but money has been recognized generally by the courts as a generic term, covering anything that by consent is made to represent property and pass as such in current business transactions, and that when a judgment or debt has been paid in Confederate money and accepted, the transaction must be regarded as settled, and can not be opened. Several decisions go the extent that, if at the time and place of payment, Confederate money was generally received in business transactions, and was in fact the current money of the country, the agent's authority to receive such money, in the absence of any directions to the contrary, may be presumed. This rule has been applied, not only when the creditor and debtor were within the same State, but when the creditor resided in a State not a member of the Confederacy, and the debtor was within the Confederate lines. King vs. King, 37 Ga. 205; Westbrook vs. Davis, 48 Ga. 471; Rodgers vs. Bass, 46 Texas, 505; Burford vs. Memphis Bulletin Co., 9 Heisk. 691; Pidgeon vs. Williams, 21 Gratt. 251;

Hale vs. Wall, 22 Gratt. 424; Robinson vs. International Life Assurance Society, 42 N. Y. 54, S. C. 1 Am. Rep. 400; Glasgow vs. Lipse, 117 U. S. 327, 6 Sup. Ct. Rep. 757; Martin's Admr. vs. United States, 2 T. B. Mon. 89, S. C. 15 Am. Dec. 129. Other decisions hold that the rule should not be applied where the creditor was within the Federal lines, with communication between him and his agent in the Confederacy destroyed. In such a case it has been held that no implied authority to receive Confederate money existed, and that a payment to the agent or attorney did not discharge the debt. Harper vs. Harvey, 4 W. Va. 539; Alley vs. Rogers, 19 Gratt. 366; Waterhouse, Pearl & Co. vs. Citizens' Bank, 25 La. Ann. 77; Fretz vs. Stover, 22 Wall, 198. In the present case the receipt for the money, the record evidence of the payment made at the time of the transaction, does not disclose any agency of any attorney in connection with it. The clerk who executed the receipts states as a witness that he received the money under the directions of James Banks as the attorney, and his recollection was that Banks was the attorney of record, if signing the docket and having the direction and control of the case makes him an attorney of record. The witness had no recollection as to what lawyer or lawyers signed the praecipe for the writs when the suit was commenced. He repeats that he took the money under the directions of Banks, whom he regarded as the attorney of record managing the case, and that after asking if it was right for him to receive the money, Banks said it was, and that he governed the case; that he (Banks) dictated the receipt, made the calculation, and after costs and fees were paid, the balance was left with the

witness, in what Banks called the registry of the court. Hendry testified that the money was paid into the registry of the court, as evidenced by the receipt, under the instructions of James Banks, attorney for the administrator, and that the attorney was present and consented to the payment. On cross-examination, in answer to the question, to whom he paid the money, he said "the clerk was representing the sheriff at the time. He said the sheriff was out of town. Col. Banks was present, as I have stated, and the money was left in the clerk's hands." The testimony of George R. Fairbanks establishes the fact that he was the attorney of record who instituted the suit for the administrator against appellants. He produced an original summons in the case, which had been left in his hands, with his name endorsed on it as sole attorney. It is true he did not obtain the judgment, and was absent when it was rendered, but it is evident from his testimoney that he was the attorney who originally commenced the suit. The statute (Thompson's Digest, p. 359, sec. 9) provides that "all moneys made upon executions in this State, shall be paid to the attorney of the party in who favor execution shall have issued. * * * And in any case when the name of more than one attorney shall appear upon the records of the court, the money shall be paid to the attorney who originally commenced the suit, or to him who made the original defense." We think the testimony is not sufficient to overcome the answer to the cross bill, and establish the fact that the money was paid to James Banks, as attorney for the administrator. If he intended to receive the money it is strange that he did not accept it

and execute a receipt for it in his own name. He died before the present suit was instituted, and his testimony could not be produced, but on the showing made, the most that can be affirmed is that he consented to, or directed the clerk to, receive the money. Knowing the fact that he was not the attorney who originally instituted the suit, it may have been his purpose not to receive the money himself, but have it deposited with the clerk for the administrator to accept. If it be conceded that Banks was the attorney for the administrator when the judgment was obtained, we do not see that he had any authority, express or implied, to authorize the clerk to receive the money. The latter stood in no previous relation of agency to either Banks or the administrator, and was not authorized by law to receive the money. Dickson vs. Wright, 52 Miss. 585, S. C. 24 Am. Rep. 677. The decree dismissing the cross-bill must, in our judgment, be affirmed.

The failure of appellants to show any valid payment of the judgment leaves them, as before stated, in great laches in not complying with their contract of purchase. Aside from the fact that judgment was obtained on the notes, the court would not hesitate to cancel the contract. Under the circumstances of the case, and in view of the insolvency of appellants, as shown, we are of the opinion that the court was right in cancelling the contract.

Appellants are in no condition to ask for a specific performance of the contract, and, in general, when a specific performance is denied, a rescission will be decreed. Kirby vs. Harrison, 2 Ohio St. 326, S. C. 59 Am. Dec. 677. The complainant in the original bill

offered to cancel the judgment, and the decree should have so directed, and to this extent it will be modified. The judgment record was burned in 1866, and has never been re-established, so far as is shown, but the decree in the present case should provide against any possible claim under the judgment.

The decree is affirmed, with the modification indicated, and an order will be entered accordingly.