106 So.2d 229 (1958)
Mattie E. FLYE, as Administratrix of the Estate of George C. Miller, Deceased, Appellant,
v.
Mrs. D.D. JEFFORDS, as distributee, E.M. Miller, as distributee, J.T. Miller, Jr., as distributee, C.S. Miller, as distributee and as director-trustee, J.C. Miller, as distributee and as director-trustee, of J.T. Miller Turpentine Co., a dissolved corporation under the laws of the State of Florida; and E.M. Miller and J.T. Miller, Jr., as executors of the Estate of J.T. Miller, Deceased, Appellees.
No. A-239.
District Court of Appeal of Florida. First District.
November 13, 1958.
Earle C. Moss, Jr., G. Frank Godfrey, Jacksonville, Earl G. Nicholson, Palatka, and Rogers, Towers, Bailey & Jones, Jacksonville, for appellant.
Dowda & Millican, Palatka, and Ausley, Ausley & McMullen, Tallahassee, for appellees.
*230 CARROLL, DONALD K., Judge.
This is an appeal from the final order entered by the Circuit Court for Putnam County granting the motion of the appellees-defendants to dismiss the amended complaint of the appellant-plaintiff. The court in this order, after reciting that the plaintiff had announced that she did not desire to plead further, then dismissed the cause with prejudice.
In her amended complaint the plaintiff, as the administratrix of the estate of her deceased husband, George C. Miller, sued Mrs. Jeffords, as distributee, E.M. Miller, as distributee, J.T. Miller, Jr., as distributee, C.S. Miller, as distributee and director-trustee, J.C. Miller, as distributee and director-trustee, of the J.T. Miller Turpentine Co., a dissolved corporation, and E.M. Miller and J.T. Miller, Jr., as executors of the estate of J.T. Miller, Sr., deceased, alleging: That on March 7, 1928, J.T. Miller, Sr., deceased, his brother, George C. Miller, and J.T. Miller, Sr.'s son, C.S. Miller, caused to be incorporated under the laws of Florida the J.T. Miller Turpentine Co., with its principal place of business at Interlachen in Putnam County, to engage in turpentine, commissaries, citrus, sawmill, and farming operations, and many other related industries; that George C. Miller on February 29, 1928, subscribed to one share of stock, which was issued as Share No. 2, on March 27, 1928, which share was seen for the first time on May 21, 1956, by the plaintiff in the possession of one Boyer, who had possession of a part of the records of the company, the same having a notation across the face of the certificate cancelled March 27, 1929, without an endorsement or assignment in writing by George C. Miller; that George C. Miller was listed as owner of one share of stock on June 30, 1934, upon the records of the company; that as late as August 20, 1943, George C. Miller was a vice-president and director of the company and occupied such capacity until his death on March 6, 1944; that George C. Miller died as owner of one share of stock of the corporation, and that the plaintiff was not notified of, nor did she consent to, the dissolution as set forth in the certificate of dissolution dated October 12, 1954, as filed in the office of the Secretary of State of Florida on October 26, 1954.
The plaintiff further alleged in her amended complaint that the corporation before its dissolution date, by its president, J.T. Miller, Sr., deceased, and its secretary, C.S. Miller, executed a deed dated October 19, 1954, conveying its interest to the defendants as a distribution of the assets of the corporation, contrary to the plaintiff's interest; that the plaintiff has requested of C.S. Miller, the former secretary of the corporation the possession of the one share issued to George C. Miller, or his interest in the corporation, and to see the records of the stockholders, both requests have been refused; that she is without remedy save in a court of equity to enforce her interest, etc.
The plaintiff also alleged in her amended complaint that during his lifetime George C. Miller contributed greatly to the "incrementum corpus" of the corporation, from the date of its incorporation in 1928 and until his death in 1944, in monies and by his daily attending to the operations and by his physical appraisal of lands and timber acquired through purchase; that as shown in the corporation's tax returns, during his lifetime he received little or no salary for his responsibilities and duties, whereas immediately upon his death J.T. Miller, Sr. and C.S. Miller, the remaining officers in 1945 and the years thereafter received salaries ranging from $4,000 to $7,500 each year; that this was contrary to an agreement between J.T. Miller, Sr., George C. Miller, and C.S. Miller that upon the debts and obligations being retired the interest of each would be as follows: J.T. Miller, Sr., 50% of the company, George C. Miller 25%, and C.S. Miller 25%; that the company was an "alter ego" of J.T. Miller, Sr., who originally controlled almost the entire company prior to the agreement mentioned and *231 changed shares of stock freely between the members of his family, as shown by the stock book of the company, and in many instances made separate notations of transfer of stock.
The plaintiff finally averred that the defendants had fraudulently and falsely misrepresented to her that she had no interest or claim in the company, by controlling the books of the company and continually disaffirming the interest of George C. Miller and constantly denying to the plaintiff access to the company's records from October 1954, until May 21, 1956, when the plaintiff was given permission to inspect the stock book in the possession of the said Boyer, wherein for the first time the plaintiff discovered Share No. 2, this being the first time when the plaintiff discovered the fraud and misrepresentation as to the interest of George C. Miller; that the defendants caused proceedings for dissolution of the corporation to be instituted and completed wherein the certificate of dissolution dated October 12, 1954, recited that the resolutions of dissolution were adopted by the directors of the company in special meeting held on October 1, 1954, and by the stockholders of the corporation at a special meeting held on the same date, at which all of the outstanding capital stock was represented in person, whereas said certificate was false and fraudulently made since the plaintiff was never notified of the meeting nor did she consent to the action taken at the meeting, which meeting resulted in the issuance of the deed mentioned above. The plaintiff prayed for an accounting and imposition of trust upon the property distributed during and after the dissolution of the company, and for attorney's fees and costs.
The defendants-appellees filed their motion to dismiss the amended complaint, setting forth as grounds that the complaint failed to state a cause of action in equity authorizing an accounting, and other grounds, including one that "the complaint shows on its face laches which would bar recovery under any theory."
In the final order, appealed from herein, the court dismissed the amended complaint with prejudice, holding that:
"The Court is of the opinion that George C. Miller, deceased, was guilty of laches and acquiescence during the approximate fifteen (15) years prior to his death in which he permitted the one share of stock to remain in the possession of said corporation marked `cancelled', if it was not his intention that said share of stock be cancelled, the burden was upon him to take prompt action on it or be barred by his neglect and long acquiescence, * * *"
The court also held that:
"It appears on the face of the Bill of Complaint that a period of 12 years, 3 months and 19 days elapsed between the time of the death of George C. Miller and the institution of this suit by the Plaintiff; that the allegations of said Bill of Complaint are not sufficient to constitute fraud."
We first address our attention to the holding by the circuit court that George C. Miller was guilty of laches. The court was clearly in error in so holding, for Rule 1.8(d), Florida Rules of Civil Procedure, 30 F.S.A., provides:
"(d) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense *232 as a counterclaim, or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." (Emphasis supplied.)
A similar question was before the District Court of Appeal for the Third District of Florida, in the case of Braz v. Professional Insurance Corporation, Fla.App. 1958, 101 So.2d 594, 595, in which that court said:
"The first and second grounds of the motion to dismiss, i.e., that the action is barred by laches and/or res judicata, can, we feel, be disposed of upon the authority of Hough v. Menses, Fla. 1957, 95 So.2d 410, and Stone v. Stone, Fla.App. 1957, 97 So.2d 352, which, in effect, uphold Florida Rules of Civil Procedure 1.8(d) and 1.11(b) 30 F.S.A., requiring such defenses to be incorporated in an answer rather than in a motion to dismiss."
An exception to this rule obtains when a complaint shows laches on its face. As was held by the Florida Supreme Court in Thrasher v. Ocala Manufacturing Ice & Packing Co., 153 Fla. 488, 15 So.2d 32, involving a suit to set aside certain conveyances as fraudulent:
"Was the bill bad for laches? In this class of cases, if laches appear on the face of the bill the defect is subject to a motion to dismiss. Section 41, Florida Chancery Pleading and Practice, Kooman. See also Anderson v. Northrop, 30 Fla. 612, 12 So. 318; Moseley v. Taylor, 68 Fla. 294, 67 So. 95; Norton v. Jones, 83 Fla. 81, 90 So. 854; Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 So. 318."
Applying the rule and this exception, we think that the allegations of the amended complaint in the instant case are not sufficient to show laches on the part of either George C. Miller or his widow, the plaintiff. The question before us is purely a question of pleading, and a question of law. In considering a motion to dismiss a complaint a court is, of course, restricted to the four corners of the complaint.
As was well stated in Connolly v. Sebeco, Inc., Fla., 89 So.2d 482, 484:
"The purpose of a complaint is to advise the Court and the defendant of the nature of a cause of action asserted by the plaintiff. The function of a motion to dismiss a complaint is to raise as a question of law the sufficiency of the facts alleged to state a cause of action. For the purpose of passing upon a motion to dismiss the Court must assume all facts alleged in the complaint to be true. Consequently a motion to dismiss a complaint must be decided on questions of law and questions of law only."
In the amended complaint herein, the plaintiff did allege that, when she saw Share No. 2 for the first time on May 21, 1956, it had a notation across the face of the certificate "Cancelled March 27, 1929, without an endorsement or assignment in writing by said George C. Miller, deceased. * * *" In our opinion that allegation cannot be construed as an allegation that the said notation was in fact made across the certificate on March 27, 1929, and that the said notation remained thereon from that date until the time of the filing of the suit, and that the books containing such notation were available to George C. Miller or the plaintiff during that period. It is true that the plaintiff alleged that her deceased husband, George C. Miller, had contributed greatly to the company from 1928 until his death in 1944 in monies and by daily attending to the operations and physical appraisal by him of lands and timber acquired through purchase. Even this allegation falls short of an allegation that he, in fact, had during that time ready access to the books of the company containing the cancellation notation on the face of the stock certificate. Ordinarily, this *233 would no doubt be so, but a court may not properly go beyond the four corners of the allegations of a complaint, when considering a motion to dismiss it, and invoke assumptions of fact not properly bottomed on the allegations of the complaint.
In its order appealed from the trial court held that it appeared from the face of the complaint that the plaintiff as administratrix was guilty of laches by having waited 12 years after her husband's death before instituting this action. Turning to the amended complaint, we find allegations, as mentioned above, that the plaintiff's husband, J.T. Miller, Sr. and C.S. Miller, the original officers of the company, had entered into an agreement that upon the debts and obligations being retired, the interest of each of the officers would be in certain named percentages, that under the agreement the plan was to increase the capital worth of the company until all claims and debts were retired and upon increasing their respective shares to the corpus of the company they would at a later date accordingly divide the same, that the agreement was a continuing contract until the party defendants disavowed it in October 1954 when the company was dissolved and the plaintiff was completely ignored in the distribution of the assets, although her husband had completed his performance of the contract upon his death in March 1944. Therefore, it seems logical to conclude that the plaintiff, as a minority stockholder, had no right to assert any legal claim to the assets of the company or to an interest therein except as to possible dividends until such time as she was advised by the remaining officers that the corporate debts had been retired. Thus until the debts had been retired, the plaintiff would not have had a cause of action to demand a distribution of the corporate assets. In 1954, ten years after her husband's death, the plaintiff demanded the right to see the corporate books, which demand was denied to her. Her repeated demands to see the books were denied until 1956 when she was given access to them and then for the first time found that her husband's stock certificates had been cancelled and the company dissolved by a false statement that all stockholders were present and consented thereto and that a deed had been executed conveying to the two remaining stockholders and officers the company's remaining assets. Immediately after making this discovery this suit was commenced. Under these circumstances we think that it cannot be said as a matter of law that the allegations of the amended complaint on its face show that the plaintiff was guilty of laches in delaying 12 years after her husband's death before bringing this suit.
We conclude, therefore, that the circuit court was in error in dismissing the amended complaint, and the final order appealed from should be, and it is, reversed, and the cause remanded for further proceedings consistent with this opinion.
Reversed.
STURGIS, C.J., and WIGGINTON, J., concur.