W. Harvey Waits v. Orange Creek Turpentine
Corporation.

166 So. 449.
Division B.
Opinion Filed February 24, 1936.
Rehearing Denied March 17, 1936.

: *W. E. Baker* and *Baxter, Clayton & Watson,* for Appellant;

. *Blount & Jones* and *Scruggs & Sobol,* for Appellee.

·TERRELL, J.—In December, 1932, Hayman's Estate, Inc.; of Gainesville, Florida, leased to D. W. Matthews a large tract of land (about 16,000 acres) in Alachua and Putnam Counties. The lease was limited to the pine timber suitable for turpentine purposes and detailed the manner and specifications under which it should be worked. It ran for ten years and Section 9 provided for releasing any or all lands from its terms by giving sixty days notice and paying the amounts per cup face stated therein.

In March, 1933, appellee, Orange Creek Turpentine Corporation, by mesne assignments came into possession of the lease. In September, 1933, Hayman's Estate, Inc., executed its deed of conveyance to appellant, W. Harvey Waits, describing the same lands as those described in the lease to Matthews, said deed being subject to all rights and privileges contained in the lease, of which the vendee, Waits, had full knowledge.

On October 7, 1933, Waits and Hayman's Estate, Inc., gave the lessee notice for release as required in Section 9, and on February 5, 1934, they gave it a second notice requesting a release of the lands described therein. Soon after the second notice and before the sixty days expired Waits went into possession of the lands over the protest

of the lessee and proceeded to box, cup, and work for turpentine purposes a large part of the timber by placing about 23,000 cups on it and cutting some of it for cross ties, completely destroying it for turpentine purposes.

In August, 1934, Orange Creek Turpentine Corporation as plaintiff filed its bill of complaint in the Circuit Court of the Eighth Judicial Circuit praying that W. Harvey Waits as defendant be enjoined from trespassing upon the lands described in the lease and from cupping or otherwise working the timber on said lands for turpentine or other purposes. The bill also prayed that an account be stated between plaintiff and defendant and that defendant be required to pay plaintiff for all turpentine and gum he had gathered and removed from the leased premises contrary to the terms of the lease.

A temporary restraining order was granted, answer to the bill was filed, testimony was taken, and on final hearing the chancellor found the equities to be with the complainant and decreed the temporary restraining order to be permanent. He also found that Wait had unlawfully extracted from timber covered by the lease twenty-six units of Naval Stores products worth $36.00 per unit or $936.00, for which he entered judgment against Waits. On Petition for Rehearing the judgment was reduced to $795.60 and the final decree was reaffirmed. After the evidence was all in but before the final judgment was entered Waits petitioned to be permitted to file a supplemental answer but this request was denied.

From the final decree finding the equities to be with the complainant and from the decree refusing to permit defendant to file his amended or supplemental answer, and from the decree denying defendant's Petition for Rehearing the present appeal was prosecuted.

The primary questions brought here for determination turn on the interpretation of the lease, but the appellant and appellee are so widely at variance as to both the theory of the case and the questions presented we feel impelled to recant and treat such questions as we conceive to be immured in the belly of the pleadings and were adjudicated by the decrees of the chancellor.

Section 9 of the lease in question is as follows:

"It is further agreed between the parties hereto that should the Lessor, during the continuance of this lease, make a *bona fide* sale of any of the lands described above, or desire small tracts for colonization purposes or for agricultural purposes, and desire a release of the privileges herein granted to the timber thereon, then in that event and upon sixty (60) days' written notice to the Lessee, specifying in particular the lands to be released, and upon payment to the Lessee of the amounts per cup face based upon the following schedule, the Lessee will, by appropriate instrument, release unto the Lessor the lands so specified:

"Faces which have been worked one year, or less, 10c per face;

"Faces which have been worked two years, 8c per face;

"Faces which have been worked three years, 6c per face;

"Faces which have been worked four years, 4c per face;

"Faces which have been worked five years, 2c per face;

"Faces which have been worked more than five years, and less than six years, 1c per face."

As stated in a preceding paragraph, immediately· after conveying the title to Waits, Hayman's Estate, Inc., gave the notice to Orange Creek Turpentine Corporation required in Section 9, demanding a release of practically all the 16,000 acres described in the lease. On February 5, 1934,

a second notice was given the lessee demanding a release of the same lands described in the first notice, including with it a tender of $269.88 to cover the cost of cup faces under the schedule. The tender was refused. Immediately after the second notice Waits entered and took possession of part of the lands and placed about 23,000 faces on the timber. August 8, 1934, appellee filed its bill of complaint, prayer to which and relief granted have been previously detailed.

From this state of facts the first question may be posited as follows: Had Orange Creek Turpentine Corporation as holder of the lease from Waits' grantor a right to restrain Waits from entering the lands described in the lease and working the timber for turpentine purposes before he (Waits) complied strictly with the terms of paragraph 9, it not being charged that appellee was in other respects in default?

Appellant in a very illuminating brief contends that the lease was one of mutual covenants, that it was the duty of appellee to disclose the amount due on cup faces under Section 9 when the notice was given, and failing to do so appellant had a right to enter and take possession of the premises.

The rule is well settled that a landlord may under the terms of a lease or at its expiration re-enter and take possession of the leased premises and defend his possession against all persons but he is bound by the provisions of the lease for re-entry. The lease in this case was for ten years and prescribed the size and length of term trees might be worked. It also provided the manner in which they should be worked and allowed sixty days after its expiration for the lessee to remove tins, gutters, and cups placed on the trees. Section 9 provided how the lessor might re-enter

and take possession of the leased premises and whether or not he complied with that section is the very nub of this case.

It is shown that the timber constituted the main value of the land and the lessee, subject to the terms of the lease, had exclusive right to work it. Under Section 9 the lessor had a right to rescind the lease in case of a *bona fide* sale, for colonization or for agricultural purposes by giving the sixty day written notice and paying to the lessee the amounts per cup face stated in the schedule to that section.

We find nothing in Section 9 to require the lessee to furnish the lessor or his successor the number of cup faces and amounts due for them under the schedule. Undoubtedly in good morals he should lend his aid in doing this when the notice is given and the information is requested and the amount necessary to pay for the cup faces is tendered or paid. Neither the October, 1933, nor the February, 1934, notice tendered or offered the amount required and neither asked for a statement of the amount due or the cup faces that must be compensated for. Neither notice met the requirement of Section 9 with reference to payment of the amounts required per cup face stated in the schedule, besides both were in other respects deficient. Payment contemplates manual delivery of the sum due or the placing of it within the control of the payee if and when contingencies to its payment are met. An offer to pay less than the amount due does not meet this test. The second notice was defective in that it tendered an amount less than the amount due and was followed by acts inimical and hostile to the interest of the lessee. The fact that Waits had acquired title gave him no right whatever to enter the lands or any part of them until he complied fully with Section 9 of the lease. He was the grantee of the lessee's grantor and

there is no showing that either was in possession of the number of cup faces on the lands. At any rate if the lessee was in possession of this information Waits should have ˙proceeded legally to secure it but not having done so he is not now in position to invoke the doctrine of clean hands.

In this we are not unmindful of appellant's contention that Section 12 of the lease authorized him to re-enter and take possession on failure of the lessee to abide by any of the covenant. The lessee here is charged with failure to comply with Section 9 when the duty of complying with that section rests entirely on appellant, the grantee of the lessor. Appellant cannot excuse his failure to comply with Section 9 by charging dereliction to appellee when it is shown conclusively that no positive duty was imposed on the latter and he had ample means by legal process to secure such information as he needed if it was in possession of the lessee.

If Waits had complied with Section 9 of the lease in giving the notice even if he had been forced to specific performance or some other legal remedy to ascertain the number of cup faces appellee would not have been warranted in facing new timber after the notice was given but the notice having been ineffective and followed by acts hostile to the lessee it constituted no restraint on the exercise of any right under the lease. When Waits insisted on a settlement on terms out of all keeping with what he was due and went into possession hostile to the right of appellee the only recourse left to the latter was resort to the law for self preservation.

The injunction was sought pursuant to the statute, Section 3181, Revised General Statutes of·1930, Section 4973, Compiled General Laws of 1927, but the allegations of the

bill with the proof were sufficient to warrant equitable relief independent of the statute. Appellee's title was not questioned and appellant's trespass was of such a nature as to cause irreparable injury. It is shown that appellee's right was solely in the timber and that was the main value of the land. Garney v. Hadley, 32 Fla. 344, 13 So. 4; Cowan v. Skinner, 52 Fla. 486, 42 So. 730.

We next consider the question of whether or not the chancellor committed error in refusing to permit the defendant to file his supplemental answer.

The record discloses that the application to file the supplemental answer came after all the testimony was in and after the chancellor announced his decision but before his final decree was actually entered. The proposed supplemental answer sets up a tender made the plaintiff on January 11, 1935, in the sum of $2500.00 and prays the court to require plaintiff to accept said amount or such part of it as he is entitled to. It does not ask for a statement of account between plaintiff and defendant and offer to pay such amount as may be found to be due. In fine, the supplemental answer does not submit the issue to the chancellor with prayer to settle or adjust under the contract but proposes that settlement be made within the terms of the tender.

The matter of allowing amendments to pleadings is liberal under our practice but rests largely in the discretion of the court. In disposing of applications to amend the court exercises his judicial discretion in the light of the circumstances of the patricular case and the state of the pleadings at the time the amendment is sought. Errors or defects in pleadings which do not effect the substantive rights of the parties should be disregarded. Rule 26, 1931 Chancery Act.

If the supplemental answer had been offered under such terms as the chancellor could have reopened the case and closed it then it should have .been permitted. We are not convinced that if it had been filed the final decree would have been different. There is no showing that the amount tendered would have covered the amount of the judgment and the amount due for cup faces under Section 9 of the lease including those placed after the putative notice was given. For this reason and the restrictions under which it was offered we do not see that the chancellor abused his discretion in refusing to let it be filed.

The third and last question necessary to be argued challenges the authority of the chancellor to award damages in his final decree.

The appellant contends that computation of the amount due was simple and that appellee had an adequate remedy at law, hence the award of damages was erroneous. The solution of this question turns on the factual situation shown to exist. The test is not whether the computation is simple or complex or whether there exists a legal remedy but whether the legal remedy is adequate. In Pomeroy's *Equity Jurisprudence,* Vol. 4, Section 1357, two rules are pronounced as guides to determine whether the case in litigation is one of equitable cognizance. These are as follows:

First. "If the trespass, although a single act, is or would be destructive, if the injury is or would be irreparable— that is, if the injury done or threatened is of such a nature that, when accomplished, the property cannot be restored to its original condition, or cannot be replaced, by means of compensation in money—then the wrong will be prevented or stopped by injunction.

Second. "If the trespass ·is continuous in its nature, if

repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the adequacy of the legal remedy."

In Cowan v. Skinner, 52 Fla. 486, 42 So. 730, this Court approved the rule as thus enunciated by Pomeroy and held that in addition to injunctive relief damages could be ascertained and awarded as incidents to equitable relief.

The bill of complaint alleges that the timber in question is valuable for turpentine purposes and no other purpose, that defendant has trespassed on the lands and is working a large amount of timber under the minimum dimensions provided for in the lease which will prior to the expiration of the lease be available to plaintiff for turpentine purposes under the lease, that defendant's conduct in facing timber under the minimum dimensions provided in the lease retards its growth and prevents it from ever becoming available to plaintiff by reason of which plaintiff is without an adequate remedy at law.

The lease was for a period of ten years, no trees could be worked longer than six years, and could not be faced if they measured under nine inches in diameter, four and one-half feet from the ground. The evidence shows that if faced under this size the growth would be retarded and many of them would never become suitable for turpentine purposes. The evidence further shows that Waits had faced a large number of trees under size and that he had used a large number of trees for cross ties that would have been available to plaintiff for turpentine purposes before the lease expired.

It is accordingly our judgment that error was not committed in awarding the injunction, that irreparable injury was sufficiently shown to make the case one of equitable cognizance, that the legal remedy would not have been adequate, that the chancellor was correct in awarding damages for Naval Stores collected and removed, and that the case comes within the rule prescribed in Cowan v. Skinner, *supra.*

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.