ERVIN, Justice.
This is a conflict certiorari review of the decision of the District Court of Appeal, Third District, in Carberry v. Foley, 203 So.2d 214.
The petition for writ of certiorari alleges :
That plaintiff-petitioner, John J. Carber-ry, as Bishop of the Diocese of Columbus, Ohio, is a corporation sole and is the owner of all property and assets of the Diocese of Columbus, Ohio, including the property and assets of Our Lady of Peace Church located in Columbus.
The plaintiff brought suit in the Circuit Court of Dade County, Florida, against Joseph Gibson Foley, Florida National Bank & Trust Company at Miami, John D. Con-nor, as Administrator of the Estate of George H. Foley, deceased; Francis I. du-Pont & Co., a New York limited partner *874 ship, and Florida National Bank at Coral Gables, Florida.
That in plaintiff’s amendment- to the complaint in the suit, Francis I. duPont & Co., a New York limited partnership, was joined as a party defendant. That said amendment to the complaint alleged:
George H. Foley was Pastor of Our Lady of Peace Church and prior to 1960 and until his death in 1965 had invested funds of that church in various stocks and securities. The church’s investment account was first handled by the brokerage firm of Merrill, Lynch, Pierce, Fenner & Smith, but was transferred to the brokerage house of A. C. Allyn & Co. The latter firm merged with the defendant Francis I. duPont & Co. in 1963. The brother of George H. Foley, namely the defendant Joseph Gibson Foley, was a registered representative of A. C. Allyn & Co. at its branch office in Miami, Florida, and continued as such with the defendant Francis I. duPont & Co. after the merger. The church’s investment account with the defendant Francis I. duPont & Co. was under the account name “Our Lady of Peace Church, Rev. George H. Foley.” Rev. George H. Foley died on February 2, 1965, after a debilitating illness. That during the period of time from April, 1963 to December 31, 1964 the defendant Joseph Gibson Foley and the defendant Francis I. du-Pont & Co. caused various securities in the said account to be sold, and the funds to be delivered to the defendant Foley, through checks drawn on duPont’s account in the defendant Florida National Bank at Coral Gables. Said checks were payable to “Our Lady of Peace Church, Rev. George H. Foley,” but the payees’ endorsements were forged thereon by the defendant Joseph Gibson Foley and the funds were converted to the use of the said defendant and said funds were never paid to the payees. These funds amounted to less than $25,000. Thereafter during the lifetime of the said Rev. George H. Foley, an additional $12,-200 was disbursed and converted by the defendant Foley in identically the same manner. After the death of Rev. Foley an additional amount in excess of $165,000 worth of stocks was sold by the defendant Francis I. duPont & Co., and checks in those amounts were drawn on duPont’s account in the Florida National Bank at Coral Gables and delivered by the defendant duPont to the defendant Foley; the defendant Foley thereupon forged the payees’ names, Our Lady of Peace Church, Rev. George H. Foley, to said checks, deposited them in an account in the defendant Florida National Bank & Trust Company at Miami, which through regular banking channels obtained payment thereof from the defendant, Florida National Bank at Coral Gables. The defendant Foley thereupon converted the said funds to his own use. The said funds have never been paid to the payees of the drafts or to the Plaintiff, who is the lawful owner of the said funds. That upon sale of said securities, the said brokerage house, Francis I. duPont & Co., became obligated to pay over to “Our Lady of Peace Church, Rev. George H. Foley” the funds held in said account, but has never paid the said funds to the account holders and Plaintiff is the legal entity entitled to recover the same.
In the original complaint Plaintiff alleged that in April, 1963 the defendant Joseph Gibson Foley commenced to cause certain withdrawals to be made from the said account in the Francis I. duPont & Co. in amounts varying from $150 to $8,-740 up through the year 1964, such amounts totalling less than $25,000. However, thereafter commencing on January 28 and continuing until February 18, 1965, the defendant Joseph Gibson Foley caused the defendant Francis I. duPont & Co. to issue its drafts for the remaining balance in the said securities account, after having sold the securities, said sum totalling in excess of $175,000, and caused the defendant Francis I. duPont & Co. to deliver said drafts to him, the said defendant, then forged the name of his brother, George H. Foley, and forged the endorsement of Our Lady of Peace Church to the said drafts and deposited the same in a joint account maintained in the defendant Florida Na *875 tional Bank & Trust Company at Miami. The aforesaid joint account at the defendant bank was opened by the said Joseph Gibson Foley in the name of Rev. George H. Foley and Joseph Gibson Foley, but without the signature or authorization of the decedent, Rev. George H. Foley.
The Circuit Court dismissed with prejudice the complaint as to the defendant Francis I. duPont & Co. The plaintiff, John J. Carberry, Bishop of the Diocese of Columbus, Ohio, a corporation sole, appealed the order of dismissal to the District Court of Appeal, which affirmed in Carberry v. Foley, supra. We review its affirmance in these certiorari proceedings.
In its opinion affirming the dismissal of the complaint as amended as to the defendant Francis I. duPont & Co., the District Court of Appeal said:
“* * * The plaintiff bishop, as a corporation sole, owns the property and assets of the Diocese of Columbus, Ohio, including the property and assets of Our Lady of Peace Church located in that city. One George PI. Foley, while serving as pastor of the church invested certain funds of the church through a brokerage house in Columbus, Ohio. The defendant Joseph Gibson Foley, a brother of the pastor, was an agent (registered representative) of a stock brokerage firm, in its Miami, Florida, office. The pastor caused his brokerage account to be transferred to the Miami office of the company where his brother was employed, and his investments then proceeded there through his brother as the broker’s agent. As a result of certain mergers, the brokerage account of the church became lodged with Francis I. duPont & Co., in the Miami office of which the pastor’s brother Joseph Gibson Foley became an employee, and the investments by or on behalf of the church continued there under the name of “Our Lady of Peace Church, Rev. George H. Foley.”
Reverend Foley died on February 2, 1965.
“It was alleged that during a period beginning several days prior to the death of Reverend Foley and extending for approximately two weeks after the date of his death, the broker’s agent Joseph Foley liquidated the account and received a series of checks or drafts from the broker, made payable to the customer (Our Lady of Peace Church, Rev. George H. Foley), that Joseph Foley then deposited those drafts in an account which had previously been established and maintained for the customer in the defendant Florida National Bank & Trust Company at Miami, and thereafter misappropriated the monies in that bank account. It was alleged the account in the bank was a joint one, in the name of the pastor and Joseph Foley; that the bank had not obtained the signature of the pastor George Foley in connection with the establishment of the joint account and that the drafts above referred to which had been made by duPont to the customer had been deposited by Joseph Foley without the endorsement by the payee, and it was alleged that following the deposit of the drafts in the account in the bank Joseph Foley had appropriated the proceeds of the joint account to his own use. Those allegations, in substance, were the basis of claims asserted by the plaintiff against the said bank and Joseph Foley in the initial complaint. They remain unchanged in the cause with reference to the claims against the bank * * (At 215.)
As to the amendment to the complaint relating to Francis I. duPont & Co. as a party defendant, the District Court said:
“* * * The amendment to- the complaint was an enlargement on the allegations as a basis for the plaintiff’s claim against the duPont firm. In the amendment it was alleged that Joseph Foley intercepted the drafts and cashed or deposited them for his own account, without repeating the details as to the joint bank account and his deposit of the drafts in that account. However, on reading the *876 complaint and the amended complaint together, the showing made as it involves the defendant duPont, is that on sale of the securities of the customer, drafts were issued payable to the customer and that the broker’s agent deposited them in an account in the defendant bank where they were available to the customer church.
“In our view the trial court was justified in concluding that at that point when the drafts had been so deposited in the bank the responsibility of the broker was terminated, it having fulfilled its duty to pay to the customer the net proceeds from the sales. What may have occurred with reference to the deposited funds thereafter might involve other parties, but such subsequent handling or disposition thereof was not the concern of the defendant duPont.” (At 215-216.)
We have quoted at length from the allegations of the petition respecting plaintiff’s complaint pleadings, and from the summary of these pleadings in the District Court’s opinion. However, our review is restricted to the language employed by the District Court in delineating the plaintiff’s pleadings.
The District Court concludes that a reading of the original complaint and the amended complaint together shows that insofar as the defendant duPont is involved, the drafts or checks covering the funds derived from the sale of the securities were made payable to the customer, Our Lady of Peace Church, Rev. George H. Foley, and that the broker’s agent (Joseph Gibson Foley) deposited them in an account in the defendant bank (Florida National Bank & Trust Company at Miami) “where they were available to the customer church.”
This reading or reasoning appears to us to be at variance with the allegations of the complaint and the amendment to the complaint as summarized by the District Court. It does not appear therefrom that the church or its pastor was privy to the endorsements of said checks or drafts by Joseph Gibson Foley or that they authorized the proceeds of the checks or drafts to be deposited in the joint account in the defendant bank. We do not believe the debtor, the duPont Company, can absolve itself of its duty to pay over the funds it owed to its customer or to see that they were duly paid over, on the ground its agent deposited such funds in a joint bank account in the defendant bank in his name and his brother’s (the pastor’s) name, since it appears neither the customer church nor its pastor received and endorsed the checks or drafts covering such funds, and the pastor did not authorize the deposits in the joint account by his signature. The customer church never received the funds so deposited because after the deposits were made they were misappropriated by the broker’s agent who had endorsed the payee customer’s name on the checks or drafts and made the deposits in the customer’s name allegedly without authorization.
We fail to follow the reasoning that under the foregoing circumstances gleaned from the complaint and the amendment to the complaint the customer church’s funds in fact had been made available to it or that “when the drafts had been so deposited in the bank the responsibility of the broker was terminated, it having fulfilled its duty to pay to the customer the net proceeds from the sale.” On the contrary, we think that at this stage of the pleadings the plaintiff-petitioner has successfully carried the burden of demonstrating that payment of the said funds by the broker to the customer was not duly and legally made. It would be an anomaly if payment of a debt could be presumed in law to have been made if a debtor or his agent deposits the amount due a creditor in his name in a bank but without the creditor’s authorization or knowledge and the creditor never receives the amount deposited because it is misappropriated by the debtor’s agent. It may, of course, develop later in the proceedings, if and when affirmative defenses are filed, that due to *877 the relationship between Joseph Gibson Foley and the pastor, his brother, the latter knew of the joint bank account and authorized the deposit therein of funds derived from the sale of the church’s stocks and securities, but at this juncture the plaintiff’s pleadings admit of no such inferences and we need not now speculate as to whether such was the case or what is the legal significance thereof.
It follows the Petitioner has shown that conflict of decisions exists by his reliance upon the following cited cases where, as here, a principal (such as duPont in the instant case) delivers its checks to its agent, which checks are payable to its creditor, and the agent, instead of delivering them to the creditor, converts the proceeds of the checks to his own use, viz., Waits v. Orange Creek Turpentine Corp., 123 Fla. 31, 166 So. 449 (holding “payment contemplates manual delivery of the sum due or the placing of it within control of the payee”); Hendry v. Benlisa, 37 Fla. 609, 20 So. 800 (holding that the burden is on a party alleging payment to show payment was actually made to creditor and not to a third party); Ocala Nat’l Farm Loan Ass’n v. Monroe and Chambliss Nat. Bank, 89 Fla. 242, 103 So. 609 (holding a forged endorsement does not pass title to commercial paper negotiable only by endorsement); Quitman Naval Stores Co. v. Conway, 63 Fla. 253, 58 So. 840 (holding conversion takes place at any time offender asserts right of dominion).
We also agree with Petitioner that under the circumstances here appearing, the defenses of payment and discharge are affirmative defenses which must be pled. They cannot be adjudicated on the motion to dismiss. Hough v. Menses (Fla.), 95 So.2d 410; Volpicella v. Volpicella (Fla.App.), 136 So.2d 231, and Flye v. Jeffords (Fla.App.), 106 So.2d 229.
The cause is remanded for further proceedings which remand contemplates that any defenses available to Respondent may be interposed and evidence submitted by the parties on any issues made.
The judgment of the District Court is quashed with direction that further proceedings in the cause be in accord herewith.
It is so ordered.
THOMAS, DREW and THORNAL, JJ., concur.
CALDWELL, C. J., and ROBERTS and ADAMS, JJ., dissent.