549 So.2d 1022 (1989)
Philip AUERBACH, Etc., et al. Appellants,
v.
Colleen McKINNEY, As Mother and Natural Guardian of Selser Bernard McKinney, Appellee.
Nos. 87-2857 to 87-2859, 87-2861, 87-2944, 87-2945, 87-2959 to 87-2961, 88-295 and 88-514.
District Court of Appeal of Florida, Third District.
June 20, 1989.
Rehearings Denied November 1, 1989.
*1023 Greenfield & DuVal and Leo Greenfield, North Miami, for Philip Auerbach, Auerbach & Neufeld, P.A. a/k/a Auerbach, Neufeld and Barnett.
Young, Stern & Tannenbaum and Glen Rafkin, North Miami Beach, and Andrew Berman, for Alan Neufeld.
Magill & Lewis, P.A. and R. Fred Lewis and Pyszka, Kessler, Massey, Weldon, Catri, Holdton & Douberley, P.A. and William M. Douberley, Miami, for Sec. Ins. Co. and Dadeland Rent-A-Car, Inc.
Thompson & Associates, for American Reinsurance.
Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and William S. Reese, Miami, for Cheryl's Day Care Center and Nat. Indem. Co.
Stephens, Lynn, Klein, McNicholas and Debra J. Snow, Miami, for Howard Neu.
Phillip J. Goldstein, Miami, for Settlement Advisors, Inc.
Dixon, Dixon, Nicklaus, Valle & McIntosh and William R. Wicks, III, Miami, for Life Ins. Co. of North America.
Stanley M. Rosenblatt, Susan Rosenblatt, Miami, and Laura S. Rotstein, for appellee.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
In several, now consolidated, appeals, those adversely affected seek review of an order of the Dade County Circuit Court, Probate Division, in the matter of a ward who has been deemed incompetent both by reason of minority and mental incompetence. Because the order at once aptly describes the no less than shocking situation which gave rise to these controversies, resolves the factual disputes in a manner fully supported by the evidence below and of which we therefore approve, and, finally, reaches legal conclusions which, for by far the most part, appropriately dispose of the questions of law before us, we reproduce it in its entirety:
THIS CAUSE came before the Court on the Second Amended Petition for Review of Settlement Agreement and Other Relief filed by Petitioner, Colleen McKinney as mother and natural guardian of Selser Bernard McKinney. The Court has reviewed the records of this guardianship which includes all pleadings and documents directly involved in these proceedings and all copies of pleadings and documents involved in McKinney v. Dadeland Rent-A-Car, Case No. 83-951, General Jurisdiction Division, and after hearing argument of counsel at numerous hearings and being otherwise fully advised in the premises, the Court finds as follows:

"FINDINGS OF FACT
"1. Selser Bernard McKinney was two years of age when he was injured in a pedestrian-automobile accident on December 16, 1982; the automobile involved was owned by Dadeland Rent-A-Car. Selser suffered a laceration to his head requiring medical treatment in the emergency room of Jackson Memorial Hospital, and in the course of said treatment the child suffered cardiac arrest and permanent brain damage.
"2. On January 10, 1983, a lawsuit was filed by the law firm of Auerbach & Neufeld, P.A., formerly known as Auerbach, Neufeld & Barnett, against the driver and owner of the vehicle involved in the accident. The cause was specially set as a No. 1 case before the Honorable John Gale for the two-week period commencing September 26, 1983, and on August 25, 1983, counsel for the McKinneys filed a Petition for Court Approval of the Minor's Settlement in the circuit court action. The Petition provided in pertinent part:
On August 24, 1983, attorneys for Defendants Dadeland Rent-A-Car, Inc., and Security Insurance Company offered a total of $2,500,000 to settle the above-captioned matter in full.
Attorneys for the Plaintiff have accepted such settlement and have received a written authority to do so from Colleen *1024 McKinney, Plaintiff and Mother of Minor Child, Selser Bernard McKinney.
"3. A hearing was held before Judge Gale on September 1, 1983, at which time defense counsel for Dadeland Rent-A-Car stated to the Court, `We seek at this time your tentative approval of the settlement, subject to our submitting the agreement and issuance of an Order at a later date.' Defense counsel Gerard Pyszka then announced that `The case involves a settlement of $2.5 million. It is because of the injuries to the infant involved in this case, as a result of an automobile accident. I do not know what other information you need.' The following portions of the transcript are pertinent here:
THE COURT: Have you set up an estate?
MR. NEUFELD: Not yet.
THE COURT: When are you going to do that?
MR. NEUFELD: If you order it, I will go down to probate and set one up.
THE COURT: We had various things occur recently that make it necessary to do that before any disbursements are made.

MR. PYSZKA: Will the Order with respect to the disbursements sent out emanate from the probate court as to what is to be paid?
THE COURT: Well, not necessarily. It can be in the Order if you want it, it is agreed.
MR. PYSZKA: We will not issue any draft unless it was pursuant to an Order entered by the Court. If we can get our agreement up, you take care of what you need to do with the probate court. We will submit all of those to you with the proposed Order. If it meets with your approval, we will go forward with it. If it requires any further elaboration or comment, we will be back.
"4. Following the hearing of September 1, 1983, Judge Gale entered his Order Approving Settlement of Minor's Claim stating:
Ordered and adjudged that Plaintiff's Petition for Approval is hereby granted. It is further ordered and adjudged that application for guardianship in the probate court shall be made prior to any distribution of the settlement funds.

"5. On September 1, 1983, Judge Gale entered an Order of Dismissal and Removal of Cause as Pending Case From Computer Printout, reciting that said Order was `based and predicated upon representations to the Court that the above-styled case has been settled, and the Court being fully apprised of same.'
"6. In a document entitled `Authorization for Settlement,' signed by Colleen McKinney on August 24, 1983, it is stated, `I also agree that should the Court insist on a Guardian Ad Litem being appointed, that the name Howard Neu will be suggested to the Court.' Howard Neu during the time of the settlement and for a period of time thereafter while acting as guardian was associated with the law firm of Auerbach, Neufeld & Barnett, counsel for the Plaintiff. A guardian ad litem was never appointed for the minor child who was and still remains severely brain damaged until August 1985. By Order of September 2, 1983, Attorney Howard Neu was appointed guardian of the property of Selser Bernard McKinney by Judge Featherstone.
"7. The record reflects that there was no subsequent Order or authorization of any kind from either Judge Gale or Judge Featherstone with regard to disbursement of the settlement funds of $2.5 million. Nor was there any Order allocating any part thereof for the benefit of the minor, his parents, or the attorneys in this cause. Without the benefit of any authorization or Order, the Security Insurance Group, reinsurers for Dadeland Rent-A-Car, issued the following drafts on September 8, 1983:
(a) $1 million payable to Auerbach, Neufeld & Barnett;
(b) $125,000 payable to Auerbach, Neufeld & Barnett;
(c) $875,000 payable to Howard Neu as guardian of Selser Bernard McKinney;
(d) $400,000 payable to Howard Neu as guardian of Selser Bernard McKinney.
*1025 On September 14, 1983, National Indemnity Company issued the following drafts:
(a) $75,000 payable to Howard Neu as legal guardian of Selser Bernard McKinney;
(b) $25,000 payable to Howard Neu as guardian of Selser Bernard McKinney.
"A subsequent Accounting of Funds Received from Settlement filed in the probate proceeding by the guardian reflects that out of a total settlement of $2,500,000 the minor child received $860,000 or approximately 34.4 percent of the settlement. Auerbach and Neufeld received: (1) legal fees in the amount of 45 percent of $1,125,000; (2) `out-of-pocket costs' of $14,317.62 (which included long-distance calls of $3,242); (3) a cost advance of $25,000 for the medical malpractice action; (4) an additional fee of $24,000 to Alan Neufeld for `financial planning'; (5) an additional fee to Auerbach & Neufeld of $4,000 for estate planning; (6) and an additional fee of $1,750 to Auerbach & Neufeld for `closing on house'; for a total of $1,194,067.062 payable to Auerbach & Neufeld. Each of the above allocations and payments were made without prior approval or order of any Court.
"8. Out of the sum of $860,000 arbitrarily allocated for the minor by Auerbach & Neufeld, $735,000 was invested in a taxable annuity by their associate Howard Neu without authorization of the probate court. The remainder of the funds, $445,932.38 was allocated to the parents; and of that amount $116,142.86 was paid to Jackson Memorial Hospital in satisfaction of a lien placed for hospital services that resulted in the minor child's permanent brain damage. Other monies allocated to the parents by their counsel were utilized to pay Selser's physicians; to purchase a new home for the McKinney family; and the balance remaining to the parents was $73,466.29. A closing statement reflecting an attorney's fee of 45 percent and the additional disbursements set forth above remains unsigned; it was never executed by the parents of Selser Bernard McKinney nor was it executed by Howard Neu as guardian of the minor's property.
"9. Following the unauthorized disbursement of the total settlement funds by the Defendants and their carriers in the original action, Dadeland Rent-A-Car, through its Attorney William Douberley of Pyszka & Kessler, P.A., filed a Motion for Order Approving Settlement on October 3, 1983,  after the fact  asserting that all parties had agreed to the terms of a `loan receipt agreement' and that $2,400,000 had been paid to Howard Neu, as guardian, and Auerbach, Neufeld & Barnett. An additional $100,000 had been withheld by National Indemnity Company because of a notice of lien for attorney's fees that had not yet been resolved. Under the terms of the loan receipt agreement, Colleen McKinney as mother and natural guardian of Selser Bernard McKinney is required to maintain a medical malpractice action against the Public Health Trust, d/b/a Jackson Memorial Hospital and the University of Miami School of Medicine which provided medical treatment to the child subsequent to the automobile accident. The loan receipt agreement is lengthy and provides in pertinent part that all monies received by the minor and his parents that were paid by the initial tortfeasors who are `technically liable' must be returned before there can be any recovery to the minor child. The loan receipt agreement provides under paragraph H that `Under the present state of the law in Florida, Defendants technically are liable for the exacerbation of Selser Bernard McKinney's injuries by those who negligently provided treatment at Jackson Memorial Hospital.'[1] The Agreement further provides:
However, in equity and good conscience, Defendants have a right of subrogation against those who negligently provided treatment. Defendants recognize their technical liability and, therefore, are loaning this sum to Plaintiffs on the condition that it be repaid out of the recovery in the malpractice action.
The total value of the loss sustained by Plaintiffs as a result of negligent treatment at Jackson Memorial Hospital exceeds $2,500,000, and Plaintiffs may be entitled to recover additional damages from the malpractice defendants.

*1026 Defendants' desire to satisfy their technical obligation to pay for the negligence of the medical malpractice defendants without prejudice to their rights to recovery from the malpractice defendants and without prejudice to Plaintiffs rights to recovery of additional monies from such Defendants.
"In essence, through this rather unorthodox `loan receipt agreement,' the Defendants claim to have loaned the McKinneys $2,475,000 which was to be repaid from the proceeds of recovery in the medical malpractice action; the McKinneys were obligated to proceed with the medical malpractice action; the McKinneys could not withdraw from the action or dismiss their claim or otherwise compromise the action without prior written consent of the Defendants; counsel for Dadeland Rent-A-Car would be co-counsel for the Plaintiffs in the medical malpractice action; neither plaintiffs nor their attorneys would be able to recover any attorneys' fee from the first $2,475,000 recovered pursuant to the Agreement; and if there was any breach of the Agreement by Plaintiffs, the cause of action would be assigned to Dadeland Rent-A-Car and the other Defendants. This Agreement was executed by Selser Bernard's parents, Alan Neufeld, Esq., William Douberley, and William Reese, the latter two as counsel for the Defendant insureds. The loan receipt agreement was never executed by Howard Neu as guardian for Selser Bernard McKinney.
"10. The loan receipt agreement was first brought to the attention of Judge Gale through the Defendants' Motion for Order Approving Settlement on October 3, 1983, and was not presented to the Court through any pleadings or hearings prior to that date, which was after the unauthorized disbursement of all funds. By Order of October 4, 1983, Judge Gale entered the Order Approving Settlement.
"11. Through subsequent hearings before Judge Gale on the issue of the approval of the settlement in this case, it is clear that at no time did Judge Gale ever approve the allocation of the settlement funds of $2.5 million to anyone other than the guardian of the property of Selser Bernard McKinney. Several examples are set forth in a transcript of the hearing before Judge Gale of May 27, 1987, on the McKinneys' motion to transfer the medical malpractice and legal malpractice actions to this Court:
THE COURT: No, the question was  there was an attorney's fee that was decided outside of my presence and without my permission, without my authority.

* * * * * *
THE COURT: And what I did was order no disbursement would be made until the guardianship was opened and left it to probate to decide what they wanted to do.
* * * * * *
THE COURT: Somebody is going to be looking at it, since I think this is the whole point of the lawsuit.
THE COURT: The point is I've said over and over again, I didn't approve the attorney's fees. It was agreed to and I had nothing to do with that.

It's not been approved; there can be no disbursements. I don't think it takes a giant probate brain to figure that out. That's why I took my hands off. It's up to them. They decided the agreement 
At the hearing of October 15, 1985, Judge Gale again stated that he had ordered Auerbach & Neufeld to petition the probate court prior to any disbursements. `The condition before any money was paid out to anybody was that a petition with the probate court be filed.' This, of course, was stated in the presence of all counsel, including defense counsel. Judge Gale further stated at a subsequent hearing that the probate court should decide whether or not there was any violation of the probate statute; and that `disbursement of property, this is a matter for the probate court.' Similarly, at the hearing before Judge Gale of November 6, 1985, on the matter of the settlement and its disbursements, the Court announced: `Let the probate court worry about this thing. That's my ruling.'
"12. The annuity that was purchased for the minor child on October 11, 1983, *1027 was without prior Court approval and before letters of guardianship were issued to Howard Neu on November 9, 1983. Settlement Advisors, Inc., a Colorado corporation, rendered advice to Auerbach, Neufeld & Barnett regarding the annuity which was issued by Life Insurance Company of North America in the name of Selser Bernard McKinney. The guardianship has been required to pay taxes on the annuity.
"13. In January 1985, former Guardian Howard Neu filed a Motion to Require Compliance with the September 1, 1983, Order and Rule to Show Cause. This motion was filed in both the circuit court action and probate proceeding. The motion was dismissed by Judge Gale. In August 1985 Howard Neu as guardian and the McKinneys as parents filed a legal malpractice suit against Auerbach & Neufeld (Case No. 85-34095). On August 10, 1985, a guardian ad litem was appointed by the probate court to investigate all matters relating to the settlement; on August 30, 1985, the Honorable Harold Featherstone entered an order authorizing the guardian to institute a professional malpractice suit against Auerbach & Neufeld (Case No. 85-36500).
"14. In response to the probate court's continuing investigation and entertainment of pleadings and motions directed to the settlement agreement in the personal injury action, and more particularly in response to instructions to bring a legal malpractice suit, Auerbach & Neufeld filed a Petition for Writ of Prohibition seeking to prohibit Judge Featherstone from exercising any jurisdiction in considering matters relating to the settlement of the lawsuit before Judge Gale two years before. The Writ of Prohibition was denied by the Third District Court of Appeal without Opinion and jurisdiction was denied by the Florida Supreme Court.
"15. On October 20, 1986, Judge Featherstone entered his Order of Recusal reciting:
The undersigned Circuit Court Judge hereby recuses himself from further consideration of this cause for the reason that he believes that he may be called as a witness to testify as to whether or not the undersigned judge had approved the distribution of the settlement proceeds.
"16. In October 1985, the guardian ad litem, Glen Smith, hired Jack Peters of the law firm of Peters, Pickle, Flynn & Niemoeller to act as counsel for the guardian ad litem in the legal malpractice suit against Auerbach & Neufeld. Shortly thereafter, Auerbach & Neufeld filed pleadings to disqualify Jack Peters from any participation in the instant lawsuit due to the fact that Peters had previously represented Auerbach & Neufeld. Proceedings relating solely to the alleged conflict of interest on the part of Attorney Jack Peters, including appellate review, prevented any further meaningful progress in either of the two legal malpractice cases from October 1985 through February 1987. At no time did the guardian ad litem seek to replace Jack Peters as counsel, irrespective of the validity of the alleged conflict; finally in February 1987 Auerbach & Neufeld voluntarily dismissed their objections to Attorney Jack Peters.
"17. Attorney Stanley Rosenblatt was retained by Colleen McKinney on behalf of herself and her child, Selser Bernard McKinney, to substitute as counsel in the medical malpractice action currently pending before Judge Orr. Stanley Rosenblatt was also retained by Mrs. McKinney to handle the legal malpractice actions against Auerbach & Neufeld and any other responsible parties. In view of the proceedings before this Court and the fact that under the existing loan receipt agreement, the first $2.5 million would inure to the benefit of the insurance carriers, Stanley Rosenblatt obtained a stay of all proceedings in the medical malpractice action. Stanley Rosenblatt moved to transfer all cases arising out of this proceeding, including the two legal malpractice cases and the medical malpractice cases, to this Court so that all parties would properly be within the jurisdiction of the probate proceeding, and matters relating to the settlement could be finally resolved. The Motion to Transfer was denied by Judge Gale.
*1028 "18. In an effort to obtain any available relief for the minor child who needs constant supervision and medical care, Mr. Rosenblatt filed before this Court several petitions seeking review of the settlement agreement and other relief. The Second Amended Petition for Review of Settlement Agreement and Other Relief, filed by Rosenblatt on behalf of Colleen McKinney as mother and natural guardian of Selser Bernard McKinney is the subject of this Order. It should be noted that Mr. Rosenblatt has assisted the Court in these proceedings and thus far has never requested a fee from the guardianship funds for any of the work he has performed in this proceeding, the legal malpractice or medical malpractice cases; nor has he even sought reimbursement of costs.
"19. At the hearing before this Court on August 26, 1987, counsel for Dadeland Rent-A-Car, William Douberly, stated that a case involving injuries such as those sustained by Selser Bernard McKinney has a value of approximately 4.5 million dollars; `we'd always thought that we'd get it.' This Court then inquired why Dadeland Rent-A-Car did not pay the 4.5 million dollars and Douberley responded, `Because under the loan receipt agreement we don't have to.' Douberley further acknowledged that the 4.5 million dollars was in `today's money.' It is uncontroverted that Dadeland Rent-A-Car through its reinsurers had approximately $10 million of insurance coverage.
"20. All of the above facts are uncontroverted and established by the record.
"21. What primarily concerns and disturbs this court is what transpired after the approval of the settlement by Judge Gale  the unauthorized tender and disbursement of all settlement funds and unauthorized investment of the minor's funds in a taxable annuity, the rights of the minor child who is severely brain damaged have been ignored. There is no dispute on the fact that the case was settled with a responsible tortfeasor with almost unlimited insurance coverage for approximately one half the value of the case; adding insult to injury, the tortfeasor's insurance carrier has the right to now recoup its entire payment through a `loan receipt agreement,' and further has the right to dictate the progress and settlement of the medical malpractice action. Former counsel for the minor and his parents in the action before Judge Gale unilaterally allocated 45 percent of the gross award for attorney's fees and further awarded to themselves substantial sums of money for estate planning, pension planning, house closing, etc., without the benefit of any Court Order. Were it within the power of this Court to do so, the settlement agreement in its entirety would be set aside and all parties would be back at square one. The innocent victim is Selser Bernard McKinney but to some extent this Court's hands are tied.
"22. This Court must reluctantly find that Judge Gale had approved a settlement of this case for $2,500,000. Much as this Court would prefer to set aside that settlement since it disagrees with same and does not believe Judge Gale was aware of the severe condition of the child and the other circumstances in this case, this Court is unable to do so since the settlement for $2.5 million was approved.
"23. This Court further finds that all parties to that action before Gale were instructed that a petition in probate court must be filed before disbursement of any funds and this was never done. All funds were tendered and disbursed without any Order of the probate court or Order of Judge Gale. The minor's name, through his appointed guardian, should have appeared on all settlement drafts from the defendants and their insurance carriers. Simply stated, Selser Bernard McKinney, by and through his guardian, never received the settlement of $2,500,000.
"24. This Court further finds that the purported loan receipt agreement is void as against public policy. It is uncontroverted that said agreement was never signed by the guardian of the property who was not made a party to such agreement. This Court finds that the loan receipt agreement is of no force and effect and the case was settled for a total of $2,500,000, as approved *1029 by Judge Gale by Orders of September 1, 1983, and September 3, 1983.
"25. Each of the Respondents here, including the Defendants and their insurance carriers in the original action as well as former counsel for the Petitioners and the former guardian of the property had an obligation both jointly and severally to provide the probate court through the guardian of the property with the full settlement proceeds of $2,500,000, subject to allocation only by appropriate Order from the probate court. This was not done.

"CONCLUSIONS OF LAW
"1. This Court has jurisdiction of this cause and the parties who are before the Court. All motions and pleadings filed by Defendants in this cause attacking the jurisdiction of this Court be and the same are hereby denied. The matter of this Court's jurisdiction was previously determined by the Third District Court of Appeal in denying the Petition for Writ of Prohibition on January 7, 1986, and the rehearing on February 18, 1986. The appellate court's decision is the law of the case. See Green[e] v. Massey, 384 So.2d 24 (Fla. 1980). Since prohibition is an original proceeding, the denial of same would be considered res judicata. Public Employees Relations Comm. v. District School Board, 374 So.2d 1005 at N. 1 (Fla. 2d DCA 1979).
"2. This Court further has inherent jurisdiction to review all agreements determining whether same are in the best interests of the minor. State Department of Health and Rehab. Services v. Hollis, 439 So.2d 947 (Fla. 1st DCA 1983); Phillips v. Nationwide Mutual Insurance Co., 347 So.2d 465, 466 (Fla. 2d DCA 1977); Nixon v. Bryson, 488 So.2d 607 (Fla. 3d DCA 1986).
"3. This Court has the inherent power and jurisdiction to enforce settlements and Court Orders, particularly where a minor is involved. See Buckley Towers Condominium, Inc. v. Buchwald, 321 So.2d 628 (Fla. 3d DCA 1975); Broadband Engineering, Inc. v. Quality R.F. Services, Inc., 450 So.2d 600 (Fla. 4th DCA 1984).
"4. This Court has jurisdiction over all Respondents in the cause and all motions and pleadings challenging said jurisdiction be and the same are hereby denied.
"5. The matter of proper allocation of funds between a parent and a minor child is a matter which may be entertained by this Court at any time. See Orkin Extermination, Inc. v. Michael Lazarus, 12 FLW 2294 [512 So.2d 1120] (Fla. 3d DCA, Case No. 87-256; opinion filed September 22, 1987). Where as here a parent sought compensation from the same settlement funds that would provide compensation for the minor, a guardian ad litem must be appointed to represent the child in the allocation proceedings. Florida Power & Light v. Macias, 507 So.2d 1113 (Fla. 3d DCA 1987), relying upon Florida Statute Section 744.391; In re: Estate of Verdier, 281 So.2d 543 (Fla. 2d DCA 1973); In re: Castro, 344 So.2d 270 (Fla. 4th DCA 1977); Comerford v. Cherry, 100 So.2d 385 (Fla. 1958). The failure to have a guardian ad litem appointed for the allocation process `overshadowed the entire proceeding and makes the allocation scheme suspect' (Florida Power & Light at 118 [1118].) This is certainly the case here where a small percentage of the total settlement proceeds were allocated to the severely injured minor.
"6. The unauthorized tender of settlement drafts by the original defendants and their insurers payable solely to counsel and the unauthorized allocation and disbursement of the settlement proceeds by Auerbach and Neufeld and former guardian Neu were violative of well-established guardianship rules and Florida law.
"7. The full settlement amount of $2,500,000.00 which was approved by the trial court in General Jurisdiction Case No. 83-951 shall be subject to allocation and distribution by this Court. The Defendants in said case who are all Respondents in this cause, Dadeland Rent-A-Car, Inc., National Indemnity Company, Security Insurance Company, American Reinsurance Company, Settlement Advisors, Inc., and Life Insurance Company of North America; Plaintiffs' former litigation counsel, Auerbach and Neufeld individually and Auerbach & *1030 Neufeld, P.A.; and the former guardian, Howard Neu, are jointly and severally responsible and directed by this Court to remit to the registry of the Circuit Court the full settlement proceeds of $2,500,000.00 plus legal interest from September 1, 1983. Said sum shall be payable by said parties within 30 days from the date of this Order. However, in the event of an appeal, no supersedeas bond shall be required. Appropriate credits shall be made by this Court for sums already paid to the guardian. Under the Rules of Judicial Administration (Rule 2.060(g)) a settlement can be enforced. This will be done by this Court.
"8. The loan receipt agreement is void and shall have no force and effect in the medical malpractice action pending before Judge Orr. None of the Defendants or their insurers in the original action before Judge Gale shall have any say as to the future conduct of said proceedings nor shall any monies be payable to the insurers from the proceeds derived, if any, from the medical malpractice action.
"9. All Motions to Dismiss, Motions for Summary Judgment and other pleadings filed by Respondents challenging the sufficiency of the Second Amended Petition for Review of Settlement Agreement, be, and the same, are hereby DENIED.
"10. Bottom line; Selser Bernard McKinney, a minor, as a result of an accident in 1982, has been permanently brain damaged. His accident case was settled for $2,500,000.00. He never received that amount. He should have received it. By this Order, this Court is attempting to carry out and enforce the settlement made in open court before the General Jurisdiction Judge. Unless and until this minor receives the full $2,500,000.00, justice shall not have been served!
"DONE AND ORDERED in Chambers, at Miami, Dade County, Florida, this 28th day of October, A.D. 1987. (emphasis original)
 / s / MOIE J.L. TENDRICH
 CIRCUIT JUDGE"
[1.] This Court acknowledges that under Florida law the original tortfeasor, Dadeland Rent-A-Car, was responsible for all Selser Bernard McKinney's damages. Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977).
We find no error and therefore affirm the order with respect to the most significant questions involved: (a) the liability of the minor's attorneys for their failure to pay and return sums owed their client in the settlement of his case and (b) the continuing liability of the primary tort defendant Dadeland Rent-A-Car and its insurers upon that settlement, one which was not discharged to the extent that it was improperly paid to the plaintiff's alleged lawyers, rather than to him. We reverse the order below only with respect to the authorized payment to the guardianship estate made by the other defendant, Cheryl's Day Care Center, Inc., and its carrier, and the asserted liability for the guardian's purchase of the annuity.

I
Although, as we have said and as must be obvious, the scenario related by the trial judge is a shocking one, the resolution of the issues now presented involves the application of principles so well established that their disregard by the "responsible" parties becomes all the more important to understand.
1. With respect to the liability to the minor for his settlement which had been approved by the general jurisdiction judge, but which was paid to the lawyers, rather than the estate of the incompetent, the probate court's decision that these parties, Dadeland Rent-A-Car, Security Insurance Company and the reinsurer, American Reinsurance Company, remain liable for that amount is governed by the simple rule that
[t]o effectively discharge an obligation, a payment must be made to the obligee himself or to an agent having authority to receive the particular payment. A payment not thus made does not reach the debt.
39 Fla.Jur.2d Payment and Tender § 18, at 92 (1982); see Carberry v. Foley, 213 So.2d 873 (Fla. 1968); Waits v. Orange Creek Turpentine Corp., 123 Fla. 31, 166 So. 449 (1936); Hendry v. Benlisa, 37 Fla. 609, 20 *1031 So. 800 (1896). Since it is clear that no court ordered or authorized the payment of Selser's money to those supposedly representing him,[1] the application of this rule requires affirmance as to appeals numbered 87-2959, 87-2857, 87-2858 and 88-514.[2]
2. The responsibility of the child's supposed lawyers to disgorge the sums of the client they have unauthorizedly received and paid themselves is, if anything, even more startlingly clear. As is apparent on the face of this lamentable case, Auerbach and his partners and associates simply gained possession of money they knew belonged, was meant for, and should have been paid to their brain damaged minor client. Without the intercession of the court whose very function it was  as theirs should have been  to protect the incompetent, they then appropriated it for themselves. Even were the amounts and excuses advanced for various of the "payments" not so offensive and even were these parties not lawyers, such conduct in itself involves a conversion or, not to mince words, a theft of Selser's property which the miscreants were properly required to return. See 12 Fla.Jur.2d Conversion and Replevin § 9 (1979).[3],[4] Hence, the trial judge's rulings to this effect, as challenged in case numbers 87-2859 and 87-2861, are affirmed.[5],[6]

*1032 II
With respect to the remaining appellants, we are unable to agree with the disposition below.
1. First, there is no basis to interfere with that portion of the settlement, amounting to the $100,000 policy limits undertaken by the codefendant Cheryl's Day Care Center, Inc. and its insurer, National Indemnity Company. These entities simply transferred the amount due from them in accordance with the settlement approved by Judge Gale, and made it payable to the appointed guardian of the minor. There was no impropriety in this and thus no basis for the probate court simply to rescind the settlement agreement as a whole because of defects affecting other parties. Hence, we reverse the orders as against Cheryl's Day Care Center and National Indemnity as challenged in case number 87-2945 with directions for the dismissal of respondents.
2. For roughly the same reasons, we reverse the orders requiring those involved in the purchase of the annuity to return the funds in question to the estate. In this respect as well we can see no deviation from the law in the purchase of a valuable asset by a duly appointed guardian which would ipso facto permit recision of the agreement. No court order is required to sustain such a transaction. See § 744.444(10), Fla. Stat. (1987) ("Without obtaining court approval, a guardian of the property may ... [d]eposit or invest liquid assets of the estate ... in ... money market mutual funds, or other prudent investments."). With respect to the guardian, Neu, the "advisor," Settlement Advisors, Incorporated, and the insurer of the annuity, Life Insurance Company of North America, therefore we reverse the order of recision.[7]

III
This case involves a series of outrageous events which culminated in an appalling result. It is to be hoped, however, that the assiduous and courageous efforts of the trial court will eventually result in the achievement of justice to Selser McKinney and to those involved in his case.
Except as specifically delineated herein, the order under review is entirely affirmed and the cause is remanded for further proceedings consistent with the order below *1033 and this opinion.[8]
Affirmed in part, reversed in part and remanded with directions.
NOTES
[1] Prominent among the many inexplicable aspects of this case is the action of Dadeland Rent-A-Car's insurers and their counsel in issuing drafts, without court order, in satisfaction of a minor's claim, payable only to the lawyers, and on which the minor's estate did not appear as a payee at all. Particularly when sums of this magnitude are involved, this conduct is so contrary to the requirements of the law, and therefore of the universal practice deemed necessary to protect the clients of defense counsel, that one is almost driven to the conclusion that these parties may well have thought that a settlement in this amount, made in this way, was in their own long-term interests as well. The insurmountable difficulty is that the interests of the ward may well have irremediably suffered as a result.

Our suspicions in this regard are perhaps reinforced by the fact that when counsel for these appellants was asked at oral argument whether, rather than be required, in effect, to pay twice for the same settlement, he wished to rescind the entire agreement and start the child's case from the beginning, he declined to do so. No such undertaking has been forthcoming between the time of oral argument and today.
[2] We have carefully examined the claims of the appellants that the proceedings below were procedurally deficient and find no harmful error in this regard.

These appellants also claim error in the lower court's invalidation of the loan receipt agreement with respect to the malpractice action. We might well be inclined to approve the conclusion below that such an agreement is void as contrary to public policy, Pidcock-Jones Co. v. Watson, 141 Fla. 376, 193 So. 305 (1940); see Monjay v. Evergreen School District No. 114, 13 Wash. App. 654, 537 P.2d 825 (1975); we need not, however, directly reach the issue here. It is apparent that the 2.5 million dollar settlement was reached and approved by Judge Gale well before and without knowledge of Auerbach's later transfer of the immensely valuable claim against the hospital via the loan receipt agreement. That transfer was thus effected without any additional reciprocal value or obligation on the part of the tort defendants and their insurers. As was also stated by the trial judge, it was thus plainly invalid for lack of consideration, see 11 Fla.Jur.2d Contracts § 72 (1979), and for lack of approval of this aspect of the settlement by the trial court as required by section 744.387(3)(a), Florida Statutes (1987).
[3] The lawyers' only real contention before us is that, as a matter of fact, the "distribution" of which they took advantage had been previously approved by Judge Gale so that the present claims against them are barred by a species of res judicata. We agree entirely, however, with Judge Tendrich that no such previous approval or anything close to it took place.
[4] We specifically hold that this disposition as to the appellants is without prejudice to a possible action against the lawyers for compensatory and treble damages under the civil theft statute. § 772.11, Fla. Stat. (Supp. 1988); see Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157 (Fla. 3d DCA 1984). It is without prejudice also to any claim for malpractice or breach of trust against them (or any others participating in that breach, see supra note 1; 10 Fla.Jur.2d Conspiracy  Civil Aspects § 3 (1979)) in the handling and settlement of the underlying tort action for the amount approved by Judge Gale.
[5] Of course the parties treated in paragraph 1 are only jointly and severally liable with the attorneys discussed in paragraph 2 to the extent that the latter respectively received the child's money; both groups are entitled to a credit for the sums which eventually found their way into the incompetent's estate. See Fulka v. Florida Commercial Banks, Inc., 371 So.2d 521 (Fla. 3d DCA 1979). We do not at this time indicate, however, which, if either, of the two sets of entities is primarily liable or which, if either, could secure indemnification from the other. At this stage, we simply say, with Mercutio, "[a] plague a both your houses!" Romeo and Juliet III. 1. 112. If we may be forgiven the unforgivable sin of tampering with Shakespeare, we suggest that this paraphrase of the next line may also be appropriate: "They have made worms' meat of [the administration of justice in this case]."

We also add that  conditioned upon their return to the estate of the funds they appropriated  the ex-attorneys may thereafter assert claims against the guardianship for any legitimate fees and expenses in the underlying case. The issues of whether, in view of their misconduct, they remain entitled to recover in these respects and, if so, in what amounts, must then be determined by the appropriate court below. We do not now pass upon these questions.
[6] In the light of the duty imposed upon us by Florida Bar Rule of Discipline 3-7.7(h), we inform the Florida Bar by this opinion that this case contains extensive evidence of violations of the Rules Regulating the Florida Bar. The lawyers' conduct seems to have transgressed the most basic tenet of our noble profession: that attorneys are bound to serve the interests of their client rather than their own. See Fla.Bar Rule Prof. Conduct 4-1.5, Ch. 4, preamble. In addition, among many other things, there is evidence of Neufeld's lack of candor toward the court and opposing counsel respectively in (a) attempting to secure a determination by Judge Gale that he had previously ruled upon a distribution of the proceeds of the settlement to the attorneys by attaching a document which had been created much later and representing that it had been presented to the court on the earlier date and (b) informing the office of defense counsel that he had appeared before a probate court which had authorized payment when no such appearance had occurred. See Fla.Bar. Rule Prof. Conduct 4-3.3.
[7] This portion of the opinion is also rendered without prejudice to any action to surcharge Neu for improperly making the investment  or for his negligence or other impropriety with respect to any other expenditure he made on behalf of the estate. It likewise does not foreclose a negligence or overpayment claim against Settlement Advisors as to its role in buying the annuity. Our holding on this issue is only that there is no basis on its face for setting the annuity transaction itself aside.
[8] With respect to the consideration of the division of the settlement between the minor and the parents, the trial court's attention is directed to this court's recent opinion in Burden v. Dickman, 547 So.2d 170 (Fla. 3d DCA 1989), and cases cited.