**In re SORRENTO'S I, INC., Debtor.**

**Bankruptcy No. 95–12225–9P1 S–1.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Jan. 17, 1996.

Phillip J. Jones, Port Charlotte, FL, for Debtor Sorrento's I, Inc.

W. Keith Fendrick, Tampa, FL, for Movant.

### ORDER ON FIRST AMENDED MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is the First Amended Motion for Relief from Stay filed by King–Funk Partnership, a Florida partnership d/b/a Sunstate Commerce Center (Landlord), who seeks relief from the automatic stay to complete a state court action to evict Sorrento's I, Inc. (Debtor). The issue before this Court involves the construction of Florida Statute § 83.56(5) (1993) which governs the remedies and termination of rental agreements. This Statute provides, inter alia, that "if the landlord accepts rent with actual knowledge of non-compliance by tenant of any other provisions of rental agreement that is at variance with its provisions, the landlord waives right to terminate the rental agreement." Relying on this provision of the Statute, the Debtor contends that the termination notice was ineffective as a matter of law and the lease in question is property of the estate. Thus, the Debtor should be entitled to assume the same pursuant to § 365(b)(2)(B).

The facts relevant to the issue under consideration are basically without dispute and although no actual evidence was presented, they may be fairly summarized based on statements of counsel for the Landlord and counsel for the Debtor.

On July 15, 1995, the Landlord and the Debtor entered into a two-year commercial lease (Lease) covering the premises located at 1105 K. Taylor Road, Punta Gorda, Florida. Paragraph 3 of the Lease provided for an annual rent during the first year of $72,-000 per year payable on the first day of each month at the rate of $6,000. The Lease is actually a consolidation of two previous Leases between the parties, one dated November 1992, and the other July 19, 1993. The new Lease extended the space covered by the previous leases and encompasses 7800 square feet of rental space. The Lease also requires the Debtor to pay, in addition to the rent, the following: specified real estate taxes, and amounts over and above those levied on the land upon which the leased premises are located; a pro rata portion of fire casualty and extended insurance coverage; and applicable sales and use tax.

Paragraph 12 entitled "Default; Notice" provides, *inter alia*, that any failure of the tenant to perform any provisions of the Lease constitutes a default and the Landlord may, at its option, terminate the Lease and retake the premises. While there is a ten-day grace period for defaults and notice of cancellation is required, this provision is not applicable to defaults based on non-payment of rent.

It appears that the Debtor failed to pay the rent due on October 1, 1995. However, on October 18, 1995, the Debtor delivered to the Landlord two checks; one in the amount of $3,920, the other in the same amount, tendered as payment of the October rent. It is without dispute that the October rent was not paid on time, but, that the Landlord negotiated the first check and the check was paid by the Bank. The second check was accepted by the Landlord even though it was postdated to October 23. However, before the Landlord deposited the second check, he attempted to verify with the Bank whether the Debtor had sufficient funds on deposit to cover the check. When informed by the Bank that there were insufficient funds to cover the second check, the Landlord did not deposit it.

On October 26, 1995, the Landlord notified the Debtor that the Debtor failed to pay the full rent for the month of October. Therefore, the Landlord elected to terminate the Lease and stated that it intended to retake the premises. On the same date, the Landlord also put the Debtor on notice of Debtor's monetary default of a Promissory Note (Note) granted by the Debtor in favor of the Landlord. Based on this default, the Landlord elected to accelerate the entire indebtedness evidenced by the Note in the principal amount of $92,333. This amount is secured by the collateral described on the Security

Agreement executed by the Debtor in conjunction with the execution of the Note.

It is apparent from the foregoing that (1) the Debtor defaulted on its obligation to pay the monthly rent pursuant to the payment provisions of the Lease; and (2) notwithstanding, the Landlord accepted the two checks with full knowledge that they were not tendered on time, that the second check was post-dated, and that even when the two checks were tendered, they did not represent the full amount for the month of October. This payment by the Debtor was clearly at variance with Paragraph 3 of the Lease. Thus, the question is whether the acceptance by the Landlord of the two untimely checks operated as a waiver of the right to terminate the Lease under Paragraph 12 of the Lease and Florida Statute § 83.56(5).

It is clear that a lessor waives his right to assert a forfeiture for a breach of covenant or condition in a lease, if, after the breach of covenant, he accepts rent from his tenant with knowledge or notice of such breach. *Moskos v. Hand,* 247 So.2d 795, 796 (Fla. 4th DCA 1971); *Farmers' Bank & Trust Co. v. Palms Publishing Co.,* 86 Fla. 371, 98 So. 143 (1923). Furthermore, courts generally do not favor forfeitures and strictly construe them against parties seeking to invoke them. *Waits v. Orange Creek Turpentine Corp.,* 123 Fla. 31, 166 So. 449 (1936). *See also, Rader v. Prather,* 100 Fla. 591, 130 So. 15 (1930) (holding that equity will relieve against forfeiture of a lease for non-payment of rent).

In the instant case, the Landlord waived his rights to forfeiture under the Lease through the following actions: by accepting the rent that was due on October 1, 1995, on October 18; by negotiating the first check; and by attempting to negotiate the second check. Thus, the Lease did not terminate pre-petition and the Landlord may not seek to complete its eviction action in state court.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the First Amended Motion for Relief from Stay filed by King–Funk Partnership, a Florida partnership d/b/a Sunstate Commerce Center be, and the same hereby denied without prejudice, provided that the Debtor cure the outstanding arrearages and make timely payments consistent with the terms of the Note and Lease.

DONE AND ORDERED.